WONG YOKE SING, #4 Bowring St., Kowloon, Hong Kong, by his next friend, Wong Kim Sing, 31–20 30th Avenue, Long Island City, New York, Plaintiff,

v.

John Foster DULLES, Secretary of State of the United States, Defendant.

Civ. A. No. 12408.

United States District Court E. D. New York.

May 22, 1957.

See also, 116 F.Supp. 9.

Marvin M. Neuman, New York City, for plaintiff.

Leonard P. Moore, U. S. Atty. for the Eastern Dist. of New York, by Margaret Millus, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

BYERS, District Judge.

The plaintiff Wong Yoke Sing by his alleged brother Wong Kim Sing, seeks a declaratory judgment that shall, (a) designate him to be a United States citizen pursuant to Section 1993 of the Revised Statutes;[1] (b) direct the defendant to issue to him a passport or "other travel document to enable him

1. Now 8 U.S.C.A. § 1431.

to travel from Hong Kong to the United States;" and (c) further relief.

For convenience, the plaintiff will be referred to as Yoke, and his brother as Kim.

The complaint, reciting that it is on behalf of a man born in China who is unable to leave that country, was filed January 28, 1952; the cause was twice marked off the calendar and for the second time it was restored by order of July 3, 1956. A motion to dismiss was denied by Judge Galston on October 28, 1954 in a decision which held that the complaint was legally sufficient as a matter of pleading, and that the issues raised required determination as the result of trial.

In October of 1953 a motion to direct the defendant to issue to Yoke a certificate of identity to enable him to come to this country to prosecute this cause was denied by an order which recited that it was without prejudice to a renewal in accordance with these provisions:

"The plaintiffs are given ninety days to obtain a blood test of the alleged mother during which time the defendant is directed to render all possible assistance, and it is further

"Ordered, that within thirty days thereafter, the defendant is directed to allow or deny the issuance of a Certificate of Identity, in writing, with his reasons therefor. Any further motion will be determined on the entire record."

The legal effect of the last paragraph above quoted has not been presented for decision herein, and is therefore not discussed. See however,

Dulles v. Lee Gnan Lung, 9 Cir., 212 F.2d 73;

Eng v. Acheson, D.C., 108 F.Supp. 682;

Wong Fon Haw v. Dulles, D.C., 114 F.Supp. 906.

The blood test aspect of the case requires brief discussion. In his opening, plaintiff's counsel made this observation:

"The mother had been blood typed in July, 1952, and the application before Judge Bruchhausen was sometime during the summer of 1953 * * * I think that the defendant, the State Department, was even unaware that its own files did contain such a report of blood typing."

Inquiry was addressed to both attorneys by the court subsequent to the trial, because the record did not disclose any facts in amplification of the quoted statement.

The inquiry developed from both counsel that under date of March 5, 1954 the Director of the Passport Office of the Department of State advised plaintiff's counsel in material part as follows:

"By despatch dated October 15, 1953 the Consulate General at Hong Kong reported that the applicant and his mother had Group O, Type M blood. The Department has not as yet been notified of the blood group and type of the alleged brother in this country, Wong Kim Sing.

"In addition, the Consulate General notified this office by cable dated December 4, 1953 that it had learned that your client actually is a Ma family man and is not a member of the Wong family.

"In view of this serious implication of fraud, the Department has ordered that a full investigation be conducted and reports submitted as expeditiously as possible. A decision concerning the issue of a certificate of identity will be deferred until the Department has had an opportunity to evaluate the reports received."

It is assumed that the court may accept the foregoing in view of the written statement of plaintiff's counsel dated May 14, 1957 in reply to the court's inquiry, as follows:

"On June 17, 1954, the attorney for the defendant submitted a motion to this Court for Re-argument,

and attached to said Motion a letter of the defendant, dated March 5, 1954. The original letter was addressed to the undersigned, and I am enclosing it, with the request that it be returned when it has served its purpose. As to the information being a part of the *record*, I presume that all moving papers, such as the Motion for Re-argument, are a part of the record before this Court."

█ It is assumed therefore that compatibility between the blood of the applicant and his alleged mother has been shown. This, however, does not establish the affirmative of the proposition that Yoke is indeed the applicant, or that he is the son of his alleged father.

The weight to be given to blood tests is discussed in the third edition of Wigmore, § 165(a), from which the following is quoted:

"* * * In other words, the blood-composition of a child may be some evidence as to the child's paternity. But thus far this trait (in the present state of scientific discovery as generally accepted) can be used *only negatively, i.e.* to evidence that a particular man P is *not* the father of a particular child C. * * * thus (*a*) In a special case it may be possible by the test to *disprove* the alleged paternity of a particular person. (*b*) In no case will it be possible to *prove* by the test the paternity, of a particular person. (*c*) Whether the special case of (*a*) will be available for such disproof depends on the probabilities of that case occurring; the chances of its occurring vary from 1 in 2 and 1 in 17."

The complaint alleges Yoke's birth October 29, 1921 at Hoi Ping, Canton, China, and his residence in Hong Kong; that his father "was a native and citizen of the United States, having been born on September 23, 1881 at Seattle, Washington."

It may be here observed that no legal evidence was offered in support of this allegation which is fundamental to the plaintiff's cause. Since the defendant does not rely upon a deficiency in proof in that connection, the subject will not be discussed, and decision will proceed on the theory that the quoted allegation is to be accepted as true for the purposes of this case.

The complaint continues by alleging Yoke's derivative citizenship; that he had lived continuously in China since his birth, and has made several unsuccessful attempts to come to this country, etc. That on February 23, 1951 he submitted affidavits to the American Consulate at Hong Kong, "and applied at said consulate for a United States passport or other travel document in order to proceed to this country;" that his application was denied "on the ground that plaintiff had failed to establish his American citizenship" and for this denial of his constitutional rights he seeks judgment as above stated. It will appear below that the application was denied, but not for the failure so alleged.

The answer contains only denials, and pleads as a defense that the court is without jurisdiction; as to this, the order of October 24, 1954 is thought not to be dispositive except as to the sufficiency of the complaint as a pleading.

█ The plaintiff called three witnesses who were cross-examined at length, and the defendant's case consisted in part of documents, duly certified under the Seal of the State Department, comprising records from the office of the Consulate General in Hong Kong. These were received over the plaintiffs' objections. It is thought that these records are admissible, since they were received in part for purposes of cross-examination, within the case of Lee Dong Sep v. Dulles, 2 Cir., 220 F.2d 264.

█ Since the complaint challenges the action of the United States Consul, if these records were not to be consulted, the court would be without information as to the basis upon which the plaintiff litigates this cause. While it is true that the officials who made the entries are

not available for cross-examination, the objection is deemed to go to the weight of the evidence rather than to its admissibility.

The record as a whole indicates that the controversy is rather a narrow one, namely whether the person designated as Yoke is indeed the individual that he asserts himself to be; in other words, it may be assumed that there was such a person as Wong Pok Haw who was born in the United States, and that he had two sons, Wong Kim Sing and Wong Yoke Sing, both of whom were born in China; and that the former has resided in this country for a number of years and was permitted to enter the United States as the son of a native born person; this means that the only question involved in the action of the United States Consul in Hong Kong, is the refusal to issue a passport because the applicant was not shown to have been in fact Wong Yoke Sing.

The necessity for the exercise of the most careful scrutiny on the part of consular officials in cases involving what may prove to be synthetic citizenship, appears from a letter appearing in Exhibit K (rendered available by consent of Yoke), which has to do with an entirely different applicant and therefore is of no evidentiary value concerning this plaintiff; however, it convincingly reveals the exacting and important nature of the duties which confront the consular agents in dealing with such applications:

"My dear younger brother Kin Cheng:

"Received your letter dated February 26 and immediately wrote two letters for you to use as evidence in the future. At the same time you must try to find some old envelopes bearing the dates as the two mentioned before. If any one wants to buy a citizenship paper for a 16 years old, tell him/her that one can have it for US $2,500.—The person is responsible for all expenses in Hong Kong and the ship charges. All expenses paid out in the U.S.A. should be charged to my account. It

is hoped that in a short period of time there will be some one in our village, especially of the same Bo who wants to buy the paper. Then it would be more advisable to sell the paper to him/her, since he/she is very familiar with the conditions of the personal affairs and of the physical condition of the village, and would understand easily the testimony. If necessary and if it is not possible for you to get a suitable person to buy the paper, sacrifice the paper by finding a male of the same age to be photographed together with our family. The family photo should be presented to the consul as evidence. According to this citizenship paper, the holder of it must be here in the States not later than the end of December next year. It will be invalid and void, when it expires. The preparation of the testimony is expected to be completed very soon. I shall let you know whether it will be sent back to you through somebody or by mail. Greetings."

The complained of action is stated in the opinion of the consular officer dated May 8, 1951 and is summarized in the final paragraph as follows:

"In view of the discrepancies and suspicious circumstances set forth above, it was determined that there was substantial reason to suspect that the applicant's claim was fraudulent and he was refused all documentation for travel to the United States. He was informed of the Consulate General's decision in a letter dated May 11, 1951."

The opening paragraph of the said opinion reads as follows:

"It is believed that the applicant has neither fully and correctly set forth all the facts and circumstances of his case nor satisfactorily established his identity as the son of an American citizen."

[4] The plaintiff's attorney urges that this opinion is inadmissible, but as

heretofore stated, no other method is open to the court to ascertain what the decision was of which the plaintiff complains, and how it was arrived at; thus it clearly appears that since the applicant had not established his identity as Wong Yoke Sing, the Consul refused to accredit him *as that person.*

█ The contention of the Government is that the administrative finding of lack of identity on the part of the applicant is not the same thing as a denial of his right or privilege as a national of the United States " * * * upon the ground that he is not a national of the United States * * *." There are decisions to the contrary, namely,

Wong Fon Haw v. Dulles, D.C., 125 F.Supp. 658;

Jew Jock Koon v. Dulles, D.C., 139 F. Supp. 205;

Soo Hoo Doo Wing v. Dulles, D.C., 147 F.Supp. 862.

These cases stand for the proposition as stated in the first (125 F.Supp. at page 659):

" * * * it is sheer sophistry to insist that the remedy resorted to in this case is not available to plaintiff because denial of his application by defendant was not, as the statute requires, 'upon the ground that he is not a national of the United States,' but rather because plaintiff had not established his identity. Indeed, plaintiff's identity and his citizenship were synonymous for purposes of his application in this case: to admit one is to concede the other; to deny one is to dispute both."

With all deference, I venture to believe that there is a clear distinction between a ruling which holds that an applicant has not shown himself to be the person that he asserts himself to be, and one which says that even if identity has been established the applicant's legal status is deficient. It must be owned that the immediate result is the same in both cases, but the paths to that result are quite different.

I may go to a bank on which a check is drawn and assert that I am the payee therein named, but if the teller is not satisfied of my identity, he may refuse payment without inquiring into the validity of the check; I may present a second one drawn by another person, and the teller may decline payment on the ground that the latter is spurious. The result in both cases is a failure to receive money, but the reasons are essentially different.

I submit that as applied to this case, it is to be assumed that the true Wong Yoke Sing would not be denied a passport or certificate of identity, but that an impostor falsely representing himself to be Wong Yoke Sing would properly be refused.

To pursue the analogy above suggested further: I might return to the bank on the following day with sufficient evidence of identity to enable me to cash the first check; and so it is with the veritable Yoke, since there is nothing in these records to indicate that by consular action he has been foreclosed of the right to establish his true identity; if he does that, there will be no occasion for him to seek relief in court.

The function of the court in this case in the present state of the law is not clearly defined, as may be recognized from a reading of an article which appears in the April edition of the American Bar Association Journal entitled, "Do Citizens Have a Right to Travel"; therein reference is made to cases in which the courts have discussed the extent to which the administrative action involved in the refusal of a passport is properly the subject of judicial review.

Reference is made to the legislation pending in Congress embraced in H.R. 9991 and H.R. 11582. The article contains this language:

"It has been generally assumed that the granting or denial of a passport was outside the scope of the Administrative Procedure Act because of the discretionary feature of this function of the Secretary of State."

Since it has already been decided that the present complaint is adequate to clothe the court with the power of adjudication, it will be seen that a feasible approach is to consult the provisions of the Administrative Procedure Act, 5 U.S. C.A. § 1001 et seq., without deciding that they are controlling but in the belief that they probably suggest a reasonable test to apply to the proceedings here involved.

In other words, if the Act were indeed to apply to this case, the outcome would not thereby be affected.

Nothing has been discovered in the course of such an analysis to indicate that the action of the Consul was arbitrary, capricious, or without reason; it was based upon the oral examinations that he conducted and the affidavits submitted to him on behalf of the applicant. The alleged mother of Yoke appeared and was questioned, and the opinion above referred to lists the deficiencies which taken together, led to the conclusion that the applicant had not established his identity "as the son of an American citizen." This is understood by the court to mean that he had not established his identity as Wong Yoke Sing.

All of the affidavits and transcripts of interviews at the office of the Consul have been examined, with the result that it cannot be said that the conclusion announced is so unsupported by testimony that the action of the Consul was arbitrary or capricious or lacking in substantial basis.

Exhibits K and L contain supplemental data seemingly brought to light as the result of a departmental reconsideration of the entire matter; that data conceivably might have brought about a change in view on the part of the Consul, but such was not the result.

One significant development is the fact that this applicant originally applied for a passport on February 23, 1951 and gave his name as Wong Yoke Sing.

He was then about 30 years of age and stated the name of his father to be Wong Pok Haw and his mother Go (Gow) Shee.

It clearly appears that the applicant's name is Wong Gim Fan, but whether his true name by birth was Wong Yoke Sing is the real problem which was presented to the Consul; he was informed by a relative who later recanted the statement that Wong Gim Fan used the name Wong Yoke Sing only to make the application for his passport "and that he obtained a Hong Kong Identity Card in that name to corroborate his 'paper' identity, Wong Yoke Sing."

This aspect of the case requires separate comment. When the applicant was confronted with that statement, he asserted that Wong Gim Fan is his marriage name, and the date of his marriage is July 18, 1946. It appears however that in 1941 a bank draft dated February 17, 1941 that was made out to Wong Gim Fan belonged to him; also in the same year a graduation certificate from the Chee Yung Middle School, Hong Kong, was made out in the name of Wong Gim Fan. Both of these documents antedated his marriage by five years. He was thus discredited as a witness on this essential question, and the Consul was justified in so concluding.

The testimony taken in court of the witnesses named does not present any facts which tend to discredit the action of the Consul.

Bearing in mind the narrow question which has been discussed, it will be found that the testimony of these witnesses does not purport to establish that on February 23, 1951 when the applicant applied for his passport, he was accompanied by his brother, Wong Kim Sing, since the latter terminated his second visit to China in the month of June, 1950, some eight months before Yoke made his application.

Another witness, Get, the alleged son of Kim, was born in China in 1931 and when about 16 or 17 left his native village and went to Hong Kong in either 1946 or 1947 and remained in that city for five or six years; he says that he lived with his uncle Yoke at an address given; however, it does not appear that

he accompanied Yoke to the office of the Consulate at the time of the said application for a passport. Therefore a convenient opportunity for identification of the applicant was not availed of, although Get did not leave Hong Kong until 1952.

The remaining witness, Wong Yok Fond, has been in this country since 1917, his most recent visit to China having been in 1933, and therefore he knows nothing about what took place in the office of the Consul of the United States in 1951. His own testimony was rendered suspect by developments not requiring recital herein.

The recantation of the affidavits of June 18 and 25, 1954, respectively, made to the Consul concerning the real identity of the applicant, is in itself one of the suspicious aspects of this case. There can be no doubt that Kim brought this about by his own letters addressed to those persons in which he urged them to keep away from the Consul's office and to refuse to come to this country to testify as witnesses in this proceeding; his explanation for what amounted to tampering with witnesses as contained in the trial minutes was unconvincing and, coupled with other aspects of his testimony, tended to discredit him as a witness.

The record as a whole fails to disclose that the action of the Consul in Hong Kong should be set aside, and the defendant ordered to issue a passport or certificate of identity to the applicant, even if there were warrant for such action which I seriously doubt as a matter of law.

█ It is assumed (to repeat) that there is such a person as Yoke and he is the brother of Wong Kim Sing; that his father (without proof or convincing evidence to that effect) is deemed to have been born in the United States; but the plaintiff has not sustained his burden of proof to demonstrate that the applicant with whom the United States Consul had to deal in 1951, was actually Yoke.

The result is that judgment is ordered for the defendant, to be settled on notice.