CHIN KAI SU, an infant, by Chin Kai Chew, his Next Friend, Plaintiff,

v.

John Foster DULLES, Secretary of State of the United States, Defendant.

Civ. A. 11833.

United States District Court
E. D. New York.

Dec. 23, 1957.

Samuel Bernstein, New York City, for plaintiff.

Cornelius W. Wickersham, Jr., U. S. Atty., for Eastern District New York, Brooklyn, N. Y., by Margaret E. Millus, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

BYERS, District Judge.

This action is colloquially known as a 903 suit (Title 8 U.S.C.A. § 903*), in which the plaintiff alleges that denial of his application for a passport or travel document by the American Consul in Hong Kong, was arbitrary and unlawful by reason of the fact that the plaintiff asserts that he is a citizen of the United States in virtue of Section 1993 of the Revised Statutes.**

The question for decision is whether Chin Kai Su, to be called Su, the actual plaintiff, is the son of Chin Jung Thoon, to be called Thoon, (and Ng Shee, his alleged mother—to be called Shee,) who was the son of Chin Leon Goon, to be called Goon, who was said to have been born in the United States.

Part of the proof consists of the records of the Bureau of Immigration, referred to at pages 329 et seq. of the record, which have been carefully reviewed; they are deemed to show that the Bureau has accepted the respective statements of Thoon and Goon concerning the birth in this country of the latter, whereby Thoon, although born in China, derived United States citizenship through Goon, his father.

While these records are not adequate to prove the essential fact as to the true place of Goon's birth, they do disclose departmental action consistent with reliance upon the truth of the representa-

* Now 8 U.S.C.A. § 1503.

** Now 8 U.S.C.A. §§ 1431–1433.

tions made by Thoon and Goon in that behalf.

The petitioner urges that now the Government is estopped to deny that Goon was born in the United States. The law is not so understood by this court. It does not appear that any agency of the Government has done or refrained from doing anything with respect to Thoon or Goon, whereby the plaintiff Su has changed his position.

Since there is no attempt by the defendant to repudiate or disavow the departmental actions referred to, there is no occasion to inquire whether estoppel could be successfully urged against the Government. Cf. United States ex rel. Lapides v. Watkins, 2 Cir., 165 F.2d 1017, at page 1019; Louie Hoy Gay v. Dulles, 9 Cir., 248 F.2d 421.

The records and other exhibits are deemed further to show, for the purposes of this case, that Thoon had three sons, namely:

Chin Kai Hong, to be called Hong, born August 8, 1927 (or perhaps September 3, 1927);

Chin Kai Chew, to be called Chew, born October 14, 1928;

Chin Kai Su, the plaintiff, born June 14, 1935.

All of the foregoing were born in Lin Far Village in China. Certain physical characteristics of that village and of the village of You Ning to which removal was had by some members of the family, are important since not all of the testimony on that subject is consistent.

Su received a document in October of 1951 from the Consul in Hong Kong, generally known as a certificate of identity, to enable him to travel to the United States in order to testify in this cause which was instituted after the denial of the passport application; this occurred in the month of May, 1951. The certificate which was issued was for the limited purpose stated, and was therefore not equivalent to what is technically a certificate of identity.

Since it is assumed for the purposes of this decision that there is such a person as Su of the parentage stated, it becomes important to require of this plaintiff a showing by a preponderence of credible evidence that he is indeed that individual. This necessity is underlined by the decision in the case of United States v. Sing Kee, 2 Cir., 250 F.2d 236, in which the operation of "slots" is discussed.

The effort was made in Wong Yoke Sing v. Dulles, D.C., 151 F.Supp. 459, to expound the difference between the denial of a travel document (a) for failure to establish identity, and (b) for failure to establish derivative citizenship on the part of the applicant.

It is unnecessary to repeat what was there written, and it will suffice to say that the denial here has been tested, in view of the statement (Exhibit A) that the reason for the denial was, "There are substantial grounds for suspecting that the claims are fraudulent."

That expression is sufficiently comprehensive to involve identity as a consideration apart from derivative citizenship. As to the latter, no discussion in addition to what has already been stated is required.

On the question of identity, however, the Consular files yield helpful information.

The alleged mother of Su was questioned carefully, and that which appears is thus commented upon by the Vice-consul:

"Applicant's alleged mother appeared to be coached, but not to have memorized her dates very well. She contradicted herself a number of times and gave rather unreasonable explanations for the contradictions. In the course of the interrogation, the following discrepancies were revealed:

* * * * * *

"2. (Question 17) Mother and applicant reversed the dates of the two elder sons' marriages. Mother

said the elder son brought his wife back to the village on June 13, 1948, stayed in the village about seven months and then departed for the United States shortly after the Chinese New Year. She had previously stated the elder son departed for the United States in the 6th month of the year in which he was married. When asked about the contradiction, said she meant that seven months after he left for the United States, his daughter was born.

\* \* \* \* \* \*

"4. (Question following No. 20, asked of mother.) Mother said the last time her husband was in China was in CR17—that he returned to United States CR17–11th month. Insisted that was last time, and was then much perturbed when she was asked how the applicant could have been born in CR24 if her husband had not been in China since CR17. Then stated she could not remember when her husband was last in China; she only knew he left in the 11th month and the applicant was born the following year in the fifth month.

"5. (Question 21) Applicant stated his father had never written about bringing him to United States before his death; mother stated the father had written the month before he died, saying he was planning to bring her and third son to United States but she didn't tell the third son for fear he would tell the villagers, and that there are lots of bad villagers (in her village of two houses), who look down on her family. When asked how there could be lots of bad villagers in a place with only two houses, she amended her statement to the effect that she was afraid he would tell the students in the school.

"6. (Question 23) Mother replied first that there are 16 houses, but then corrected herself and said two in her present village to which she moved about ten years ago, and that the old village has 16 houses.

"7. (Question 24) Mother named two villages in the vicinity of theirs, one of which she called Luk Tung Village and located it to the southeast, and Hin Mi Village. Applicant named two villages—Luk Ock, first placing it to the west and then changing it to north, and Hin Mi Village, location agreeing with mother."

A reading of the transcript of the questions to and answers by the alleged mother, commends the quoted comments, in the opinion of this court.

Obviously the person presumed to know the most about the identity of the plaintiff would be his purported mother, but if the woman who asserted that she was such was not found to be a credible witness, the decision of the Consul not to issue the passport was anything but arbitrary and unlawful as alleged in the complaint.

The first and second sons of Thoon, Hong and Chew, testified at the trial, and in some respects touching pedigree, familial relationship, etc., discrepancies were revealed.

Chew's entire testimony is rendered vulnerable by the contradictions and discrepancies involved in his cross-examination touching the amount of his income as contrasted with his bank deposits which were shown; specifically on the question of whether he had obtained a loan of $2,000 from a certain person whom he named, the testimony of the latter to the effect that he never made a loan of any denomination to Chew is accepted in preference to that of Chew; nor was he convincing on the subject of his mother's health.

There is also a conflict between Chew's testimony and that of Su, on the subject of whether their grandmother was living in 1951.

There is an area of dispute which has not been resolved concerning the true birthplace of Thoon and whether the fam-

ily moved from Lin Far to You Ning, and if so, when. Thoon died in 1950 in Brooklyn and his tombstone, which has been identified, bears the village name of You Ning and not Lin Far, although the word "birthplace" is not stated,— Chew says that You Ning was used as the place to which his father's spirit could be expected to return.

The circumstances related by Su of his departure from the village of You Ning and his residence in Hong Kong prior to his coming to this country, are less than convincing; he said that he was accompanied to Hong Kong by a gentleman to whom his custody was entrusted by his mother, but he did not recollect that person's name although the trip seems to have required more than a day for its accomplishment. He did not recall the name of the schoolmaster of the school which he attended for six years, and it elsewhere appears that the school contained only a comparatively few pupils, and this lapse of memory is difficult to reconcile with good faith. The reason for his prolonged stay in Hong Kong, and the attendant circumstances leave much to be desired for convincing explanation.

It should be said that blood tests of the alleged mother were conducted, and those tests reveal compatibility and were received in evidence over the defendant's objection, the court having been somewhat instructed on the subject as appears in the Wong Yoke Sing case by the writings of Professor Wigmore.

In other words, the statement of Dr. Sussman addressed to the United States Attorney under date of May 1, 1957, tabulates the tests and closes with this language:

"There are no contradictions to the laws of theoretical expectancy in these findings; filial relationship therefore cannot be excluded."

Since a blood test of Thoon cannot be obtained, and even if it could it would not be conclusive on the question of the identity of the plaintiff, even if compatibility were found, this aspect of the plaintiff's case does not effectually dispose of the question of identity.

There were received in evidence over the plaintiff's objection, two exhibits from the files of the Consul General in Hong Kong having to do with affidavits made in June of 1957 by two named persons in his office. They purport to show that the plaintiff is not Su, the third son of Thoon, but an entirely different person. These were received as part of the files of the Consulate, and the motion to strike is denied, but they have not been given any weight by this court, in reaching its decision, because of their ex parte character.

 Upon the case as a whole, it is hereby found that the plaintiff has failed to sustain his burden of proof, and judgment is ordered for the defendant, to be settled on notice.