**BERGEN DRESS COMPANY, Inc.,**
**Appellant,**

v.

**E. P. BOUCHARD, District Director, Immigration and Naturalization Service,**
**Newark, New Jersey.**

**No. 13717.**

United States Court of Appeals
Third Circuit.

Argued Jan. 11, 1962.

Decided June 6, 1962.

Albert J. Persichetti, Philadelphia, Pa. (Andrew N. Farnese, Philadelphia, Pa., on the brief), for appellant.

Sidney E. Zion, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., Barbara A. Morris, Asst. U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and KALODNER and GANEY, Circuit Judges.

GANEY, Circuit Judge.

Appellant, a corporation duly organized and existing under the laws of New Jersey, filed a petition on July 21, 1959, to acquire a first preference status for a prospective quota immigrant in a visa proceeding pursuant to § 204(b) of the Immigration and Nationality Act, 8 U.S. C.A. § 1154(b). The petition was denied by the Immigration Service because the prospective immigrant, born on August 26, 1937, had not completed at least five years journeyman experience as a tailor subsequent to her attainment of age 21. The denial was affirmed by the United States District Court for the District of New Jersey on appellee's motion for summary judgment in a declaratory judgment action brought by the appellant.

Appellant claims that the prospective quota immigrant has met the requirements of § 203(a) (1) (A) of the Act, 8 U.S.C.A. § 1153(a) (1) (A),[1] and that disapproval of its visa petition is not within the discretion of the Attorney General, acting through the Immigration Service. The appellee, District Director of Immigration & Naturalization Service of New Jersey, maintains that the District Court was without jurisdiction to entertain the action for a declaratory judgment.

Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, provides that any person adversely affected or aggrieved by any agency action shall be entitled to judicial review of such action, "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion."[2] Sections 203 and 204 of the Immigration and Nationality Act do not expressly leave the allotting and issuance of immigrant visas within quota groups to the discretion of the Attorney General. Nor, in our opinion, do they do so by implication.[3] In Rusk v. Cort, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962), the Supreme Court of the United States, after citing the cases of Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L. Ed. 868 (1955) and Brownell v. We

---

1. This subsection provides: "§ 1153. Allotment of immigrant visas within quotas; order of issuance; determination

"(a) Immigrant visas to quota immigrants shall be alloted in each fiscal year as follows:

"(1) The first 50 per centum of the quota of each quota area for such year, plus any portion of such quota not required for the issuance of immigrant visas to the classes specified in paragraphs (2) and (3) of this subsection, shall be made available for the issuance of immigrant visas (A) to qualified quota immigrants whose services are determined by the Attorney General to be needed urgently in the United States because of the high education, technical training, specialized experience, or exceptional ability of such im-

migrants and to be substantially beneficial prospectively to the national economy, cultural interests, or welfare of the United States, * * *."

2. Subparagraph (e) of the Act, in part, provides:

"* * * the reviewing court shall * * * (B) hold unlawful and set aside agency action, findings and conclusions found to be (1) arbitrary, capricious, *an abuse of discretion,* or otherwise not in accordance with law * * *." (Italics ours.)

3. For discretion to exist, it need not be expressly committed by statute. See United States ex rel. Salvetti v. Reimer, 103 F. 2d 777 (2 Cir. 1939).

Shung, 352 U.S. 180, 77 S.Ct. 252 1 L.Ed. 2d 225 (1956), pointed out: "The teaching of those cases is that the Court will not hold that the broadly remedial provisions of the Administrative Procedure Act are unavailable to review administrative decisions under the 1952 [Immigration and Nationality] Act in the absence of clear and convincing evidence that Congress so intended." Although a different section of the Immigration and Nationality Act was under consideration in the Cort case, the quoted portion of that case applies equally well here.[4] And we hold that the District Court had jurisdiction to entertain the declaratory judgment action in the case before us.

■ In addition to claiming that the prospective quota immigrant has met the requirements of § 203(a) (1) (A), appellant contends that the five years tailoring experience beyond age 21 eligibility requirement is beyond the Attorney General's power to impose, is arbitrary and capricious, and is discriminatory. In support of the excess authority contention it says that the Service may not consider age and duration of experience as factors in fixing eligibility requirements because the subsection does not specify them as part of the characteristics. Though he is not vested with discretion in determining who may be granted or denied a first preference status under § 203(a) (1) (A), the duties imposed upon him by that subsection are not all purely ministerial. The necessary characteristics of the service which he shall determine to be urgently needed are set forth in broad general terms; one of them even requires him to make a prediction. Moreover, § 204(c) of the Act requires an investigation of the facts in each case and consultation with appropriate agencies of the Government by the Attorney General before he approves the petition for a preference status. Since economic conditions seldom remain static, the head of the Justice Department must of necessity have some latitude in exercising his judgment in ascertaining whether those characteristics exist in each case, and to consider factors which in his judgment go to make up those relative characteristics. If he were not permitted to do so, we are unable to see how the purpose of subsection could be effectuated with any semblance of uniformity. The lack of specific criteria relating to the experience required concerning the urgently needed services of various occupational groups would permit each District Director to rule upon visa petitions without regard to what is being done in similar cases in other parts of the country. This would be contrary to one of the obvious purposes of the Act: uniformity of application. The factors taken into consideration by the Service in denying appellant's petition are part of, and not in addition to, the characteristics set forth in § 203(a) (1) (A).

■ That the eligibility requirements in question were first set forth in the denial of appellant's petition and not in a regulation does not militate against the validity of the requirements. They may be established by regulations or by decision of the agency in a specific case. See Securities & Exchange Commission v. Chenery Corporation, 332 U.S. 194, 201–203, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947).

■ The Immigration Service concedes that there is an urgent need in this country for the services of high quality tailors with specialized experience and that the services to be performed by such persons will be substantially beneficial prospectively to the national economy of the United States.[5] The Service does not admit that the potential immigrant has that specialized experience to perform

4. In Yu v. Hurney, 192 F.Supp. 707 (D.C. E.D.Pa.1961), a case in which a show cause order was sought to show why a petition to establish third preference status by reason of relationship should not be approved, no claim was made that the court was without jurisdiction to issue the order.

5. This is a testimonial to the recognition of the fact that being dressed in well tailored clothes is of national importance.

such service at this time because she has not met the standard set by the Service. The reasons for the five years tailoring experience beyond age 21 eligibility requirement are set forth in an interim decision decided July 10, 1961, in a visa proceeding by the Assistant Commissioner of Immigration.[6] In pertinent part, the decision states:

"A large percentage of the first preference petitions filed with the Service has been in behalf of tailors. As a result, the Service has acquired considerable experience with regard to tailors and the tailoring industry. Appropriate inquiries revealed that many tailors who had gained admission as first preference quota immigrants left the industry in a relatively short time after arrival in the United States to seek employment in a more lucrative field, or deserted the tailor trade when it became personally convenient to do so. In most cases it was found that this was primarily true of the younger tailors many of whom had acquired almost all of their occupational experience in their teens. Because of the serious consequences to the tailoring industry from the continuing loss of persons specially brought to the United States by the industry to fill tailor shortages, it became necessary to take steps to relieve the situation in view of the statutory requirement that a first preference classification be accorded only to immigrants whose services would be substantially beneficial prospectively to the national economy, cultural interests, or welfare of the United States. Accordingly, on November 19, 1958, to assure that the qualifying experience was acquired during maturity, and that it was acquired for the serious purpose of pursuing a lasting career, the Service established the policy that first preference petitions for tailors would be approved only when a satisfactory showing was made that the beneficiary had an aggregate of five years' experience as a journeyman tailor subsequent to attaining the age of twenty-one years. Many months earlier, representatives of labor and industry had agreed that a minimum of five years of actual working experience in the performance of all the hand and/or machine sewing operations to make an entire garment, such as a suit or overcoat, were necessary for an individual to be recognized as a skilled tailor."

There is a rational basis for the particular eligibility requirement set by the Service in this case, and they bear a reasonable relationship to the general characteristics set forth in the subsection. A tailor's services are not so clearly of substantial prospective benefit to the national economy as to render consideration of length of experience beyond maturity age arbitrary and capricious.

The action taken by the Service was not discriminatory. It is true that the eligibility requirements here in question have not been applied to the services of artisans of other trades. However, in the absence of an allegation to the contrary, we must assume that the conditions which motivated the Service in setting up the eligibility requirements as to tailors do not exist with respect to the other trades.

The judgment will be affirmed.

---

6. *Matter of S......* (In visa petition proceedings, A-11073066, Interim Decision #1144), ...... I. & N. Dec. ...... (1961).