Philip TANG, Petitioner,

v.

**DISTRICT DIRECTOR OF the U. S. IM-
MIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

Civ. No. 68–1259.

United States District Court
C. D. California.

March 28, 1969.

Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Division, Dzintra I. Janavs, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

Hiram W. Kwan, Los Angeles, Cal., for plaintiff.

### MEMORANDUM OPINION AND ORDER

IRVING HILL, District Judge.

This is a petition to review a decision of the Immigration and Naturalization Service. Petitioner is a native of Hong Kong, a British subject, who has been in this country since 1959, studying and, of late, working. On March 21, 1968, he filed an application for a third preference classification visa, claiming to be entitled to it as an electronics engineer. The application was denied by the District Director, and that denial was af-

firmed on appeal by the Regional Commissioner.

It is necessary at the outset to summarize the statutory scheme, including the regulations issued under statutory authority. In the process, I will attempt to delineate which provisions of the law and regulations *are* involved in the instant case and which *are not*.

In 1965, the Immigration and Naturalization Act was amended to reorganize the entire system of preferences. The third preference classification is defined at Title 8 U.S.C. § 1153(a) (3) as follows:

"Visas shall next be made available, * * * to qualified immigrants who are members of the professions, *or* who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests or the welfare of the United States." [Emphasis Added]

The instant Petitioner claims to be entitled to the third preference visa as a "member of the professions". He makes no claim of being entitled to the visa as a person of "exceptional ability in the sciences or the arts" within the above statute. So the latter category is not involved in this case.

The Act defines the term "professions". 8 U.S.C. § 1101(a) (32) provides:

"(32) The term 'profession' shall include but not be limited to architects, engineers, lawyers, physicians, surgeons, and teachers * * * "

The instant Petitioner claims to be an "engineer" within the meaning of the above-quoted language, and particularly claims to be an electronics engineer. Neither the Act nor regulations thereunder define the words "member" or "engineer".

Conceivably the instant case could be decided on the ground that Petitioner is not an "engineer". But the Service did not decide the case on that basis and neither counsel makes any reference to

that possible ground of decision in the briefs. So there will be no further discussion herein of that possible ground of decision. What constitutes an "engineer" under the Act is not involved in this case.

Assume, *arguendo*, that an applicant is found to be an "engineer" or a "lawyer" or a "physician". That is not enough to entitle him to the third preference status. There is an additional requirement, imposed by 8 U.S.C. § 1182 (a) (14). That section requires that the Secretary of Labor shall have "determined and certified" to the Secretary of State and the Attorney General that

"(A) there are not sufficient workers in the United States who are able, willing, qualified and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such [alien] will not adversely affect the wages and working conditions of the workers in the United States similarly employed."

Both the Attorney General and the Secretary of Labor have statutory authority to promulgate regulations under the Act. One of the regulations promulgated by the Secretary of Labor is the so-called "blanket" certification contained at 29 CFR 60.2, which he adopted under the above-quoted § 1182(a) (14). That regulation, in Schedule A thereof, contains a list of occupations (including the occupation of "electronic engineering") which are given blanket certification if the person involved meets the criteria of either Group I or Group II of such Schedule A. Group I consists of persons who have an advanced degree from a foreign institution of higher learning. It is not involved in the instant case. Group II consists of

"persons who have received a *degree* conferred by an *accredited institution* of higher learning in any of the following specialties *or have experience or a combination of experience and ed-*

*ucation equivalent to such a degree:
* * *"* [Italics supplied]

Electronic engineering is one of the specialties listed.

Petitioner, who has a degree from an American university, apparently acknowledges that that university is not an "accredited institution of higher learning" within the above-quoted regulation. His basic contention is that he has had "a combination of experience and education equivalent to" a degree from an accredited institution.[1]

He makes an incidental claim that the Service is estopped by denying that the particular university involved is an "accredited institution" because of its recognition of the university for other purposes. These are the two issues involved in this case.

Apparently the Secretary of Labor can give an individual certification under § 1182(a) (14) in any case that is not covered by the provisions of his blanket certification. But this Petitioner has received no such individual certification. None appears among the exhibits in the Administrative Record. There is no evidence in the record that he has even applied for one. A statement in Petitioner's complaint (p. 3, 1, 2) apparently claiming that Petitioner has received an individual certification from the Secretary of Labor is, if so intended, an obvious error. So, no issue of an individual certification is involved in the case.

FACTS

The facts of the case are few and undisputed. Petitioner who is now 31 years old was admitted to the United States in 1959 on a student visa. After attending three other colleges, he enrolled at Pacific States University in the fall of 1964 and received the degree of Bachelor of Science in electronic engineering from that school on September 8, 1967. Pacific States University is a privately-owned institution having an average annual enrollment of 200 students. It is not an accredited institution. Its degrees and its credits are not recognized or accepted by either the University of Southern California or the University of California at Los Angeles, the two major institutions in this area. The Accrediting Commission of the Western Association of Schools and Colleges has refused to give it accreditation as has the Office of Education in the U. S. Department of Health, Education and Welfare. Nevertheless, Pacific States is an approved school for Veterans Administration benefits. As a result of such approval, the Attorney General, beginning in 1954, included the school in a list of schools approved for the attendance of non-immigrant foreign students entering this country on student visas. However, the Attorney General's list carried the following *caveat:*

"The fact that an institution has been included as being an 'established institution of learning or other recognized place of study' does not mean that the Attorney General or the Office of Education is listing the institution as being 'accredited' as that word is generally used in the United States with respect to educational institutions."

There is no evidence in the record that Petitioner ever saw this *caveat.* On the other hand, he does not deny knowing of it.

Since July 1967 Petitioner has been registered with the State of California as an "engineer-in-training" under California Business & Professions Code, § 6751. Since January 1968 he has been employed by Burroughs Corp. as an "electronic technician". Thus, on the

1. The regulation does not define the term "equivalent" or provide any guidelines for judging what types of experience or education, or both in combination, would be "equivalent" to a degree from an accredited institution. No reported case has been found which construes or defines the term "equivalent" in this context.

date of the filing of his application for third preference status, March 21, 1968, he had been so employed for less than three months.

The essence of the Immigration Service's decision in the instant case is contained in the following language from the decision of the Regional Commissioner:

> "Giving careful consideration to all the factors set forth above, it is concluded that the attainment of a degree in electronic engineering from a non-accredited school does not provide the petitioner with the academic background that can be accepted as a realistic qualification for a professional electronic engineer. Petitioner has failed to establish that he has received the equivalent of a Bachelor's degree in electronic engineering conferred by an accredited college or university in the United States or that he has the experience or a combination of experience and education required for such a degree. Petitioner has failed to satisfactorily establish that he is eligible for the preference classification he seeks. * * * "

█ I find that there is no dispute as to any material fact. The case is ripe for summary judgment. Summary judgment is an appropriate remedy in an action of this type for judicial review of the denial of a preference visa. Bergen Dress Co. v. Bouchard, 304 F.2d 145 (3d Cir. 1962); Kirsten-Sanders Dental Laboratory, Inc. v. Sahli, 348 F.2d 442 (6th Cir. 1965); Flower Furniture Manufacturing Corp. v. Esperdy, 229 F.Supp. 182 (S.D.N.Y.1962); Maggiore Bakery, Inc. v. Esperdy, 238 F. Supp. 374 (S.D.N.Y.1964).

## DISCUSSION OF THE LAW

At the outset the Court must consider the scope and nature of judicial review in cases of this type. It is necessary to define the bases and criteria for affirming or reversing an administrative denial of a preference visa application.

█ It seems clear that an administrative decision of this type should be reversed if the Court finds that the hearing was conducted in a manner which lacked essential fairness or was conducted in violation of statutory procedural requirements.[2] Petitioner makes no such claim in the instant case.

Appellate Courts have also said that an administrative decision of the kind involved here should be reversed if the agency has made an error of law.[3] But the term "error of law" has always lacked precise definition. Scholars in the field of administrative law have spent much time and effort discussing the differences (if any) between questions of fact, questions of law, and mixed questions of fact and law, when applied to judicial review of administrative decisions.[4]

Only one of the two questions raised by Petitioner would appear to be a question of law in which he claims the agency made an error of law. That question is his claim that the Service is estopped to find that Pacific States University is not an accredited institution. In a detailed discussion, *infra*, I hold that his contention in this regard is without merit.

Eliminating defects in the Administrative Hearing and errors of law, we are left with questions of fact or mixed questions of fact and law and the stand-

2. Kessler v. Strecker, 307 U.S. 22, 59 S. Ct. 694, 83 L.Ed. 1082 (1938); Cakmar v. Hoy, 265 F.2d 59 (9th Cir. 1959); Lehich v. Rinaldi, 246 F.Supp. 675 (D.C. N.J.1965); Sovich v. Esperdy, 206 F. Supp. 558 (S.D.N.Y.1962), 319 F.2d 21 (2nd Cir. 1963).

3. Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694 (1938); Chao-Ling Wang v.

Pilliod, 285 F.2d 517 (7th Cir. 1960); Wadman v. Immigration and Naturalization Service, 329 F.2d 812 (9th Cir. 1964).

4. See, e. g., Schwartz, Judicial Review of Administrative Action: Mixed Questions of Law and Fact, 50 Geo.L.J. 684 (1962); 2 K. C. Davis, Administrative Law Treatise, Chapters 29 and 30 (1958).

ards to be used by a Court in reviewing administrative action thereon. Petitioner's main claim, i. e. that the Service committed error in holding that he did not have "a combination of experience and education equivalent to \* \* \* a degree" from an accredited institution seems to raise a question of that type, i. e. a mixed question of fact and law.

■ Petitioner's counsel contended at the argument that Petitioner is entitled to a "trial *de novo*" in this Court, or at least factual determinations *de novo* by this Court. He is clearly wrong in both such contentions. Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694 (1939); Lechich v. Rinaldi, 246 F.Supp. 675 (D.C.N.J. 1965); Flower Furniture Mfg. Corp. v. Esperdy, 229 F.Supp. 182 (S.D.N.Y. 1962).

Under the old Act, although the Court of Appeals for the Ninth Circuit had not spoken, there were a number of opinions which attempted to define the standards and criteria for reviewing denial of preference visas. These opinions used quite different tests and words, including whether the administrative decision had a "rational basis",[5] whether the decision was "arbitrary and capricious",[6] whether the administrative decision was "sufficient on [its] face",[7] whether the administrative decision was supported by "substantial evidence",[8] or whether there had been an "abuse of discretion" by the agency.[9]

In addition to the confusion created by the differing terminology recited above, it was necessary to consider the effect of Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694 (1939). In that case the Supreme Court was dealing with an exclusion order, a much more serious and final type of determination than the denial of a preference visa. Yet the opinion states that the administrative decision would not be disturbed if "there was evidence to support the finding of the Secretary." This langauge seems to adopt the criterion of affirming if there is *any evidence* to support the finding.

Fortunately, the standard to be applied under the 1965 Act has been settled by a very recent decision of the Ninth Circuit Court of Appeals. In Dong Yup Lee v. United States Immigration and Naturalization Service, 407 F.2d 1110, decided March 4, 1969, the Court of Appeals said:

> "In reviewing the denial of a preference classification, this court is limited to the determination of whether the Attorney General abused his discretion."

The opinion does not define "abuse of discretion". For a discussion of various definitions of the term see Jaffee, Judicial Control of Administrative Action, pp. 181–82 (1965); Comment, Abuse of Discretion: Administrative Expertise vs. Judicial Surveillance, 115 U. of Pa.L. Rev. 40 (1966). And Circuit Judge Henry J. Friendly has written an illuminating discussion of "abuse of discretion" as used in an immigration context in Wong Wing Hang v. Immigration and Naturalization Service, 360 F.2d 715 (2d Cir. 1966).

The decision of the Service must be affirmed in this case as not constituting an abuse of discretion under *Dong Yup Lee, supra*. Incidentally, and by way of *dictum*, I would have affirmed it under any of the criteria previously mentioned.

■ It must be remembered that Petitioner claims to meet the qualifications

---

5. Bergen Dress Co. v. Bouchard, *supra;* Kirsten-Sanders Dental Laboratory, Inc. v. Sahli, *supra.*

6. Bergen Dress Co. v. Bouchard, *supra;* Roumeliotis v. Immigration and Naturalization Service, 304 F.2d 453 (7th Cir. 1962).

7. Roumeliotis v. Immigration and Naturalization Service, *supra.*

8. Kirsten-Sanders Dental Laboratory, Inc. v. Sahli, *supra;* Flower Furniture Mfg. Corp. v. Esperdy, *supra.*

9. Kirsten-Sanders Dental Laboratory, Inc. v. Sahli, *supra;* Maggiore Bakery, Inc. v. Esperdy, *supra.*

set forth in the regulations for the third preference visa. The burden of proof is surely on him. In the instant case, the evidence is overwhelming against his contention. He has shown only the degree from a nonaccredited institution and a few months of employment in an apparently non-engineering position, called "electronics technician", presenting no evidence at all of the duties he performs in that position. In addition, he has shown a state certificate as an engineer-in-training, which will be evaluated *infra*.

■ Whatever test is used, the administrative holding that he has not shown the "equivalent" of a degree in electronic engineering from an accredited institution must be sustained.

The reasonableness of the agency's decision in the instant case is reinforced by an examination of California legislation. In Business & Professions Code, § 6751, the California Legislature provides for the registration of professional engineers. In order to be so registered, the section requires that the applicant show "six years or more of experience in engineering work * * * evidencing that applicant is competent to practice * * * engineering in the branch for which he is applying for registration * * * *", and that he pass an examination. The section goes on to provide that graduation from an "engineering school * * * where the curriculum has been approved by the board [i. e. an accredited institution] shall count as four years of experience". The section then provides that "the board, may, in its discretion consider graduation in a nonaccredited engineering curriculum, as equivalent to not more than two years experience." Thus the state has in essence said that a degree from a nonaccredited engineering school, like Petitioner's degree in the instant case, should be considered as having no more than half the value of a degree from an accredited institution in determining work experience for engineers.

■ Petitioner's California certificate as an engineer-in-training is of no comfort to Petitioner and adds nothing of substance to his claim. An examination of the California statutes dealing with the licensing and certification of engineers (Business & Professions Code, § 6700 ff) reveals the limited significance of a certificate as an engineer-in-training. The important act whereby the state recognizes a person to be qualified to practice the profession of engineering is his registration by the state as a professional engineer, either civil, electrical or mechanical. Without this registration, he may not practice the profession or use the word "engineer", alone or in combination with other words, as a title. It is evident that the provision for certifying an engineer-in-training is a type of official interim recognition for persons who are going to be applicants for the status of registered engineer as soon as they complete the necessary experience and training requirements. Business & Professions Code, § 6756, the section which creates the category of engineer-in-training, provides that the certificate of an engineer-in-training shall expire within a certain number of years unless the applicant by that time has secured his registration as a professional engineer. Business & Professions Code, § 6756.2 specifically provides that a certificate as engineer-in-training does not authorize the holder thereof to assume responsible charge of engineering work or to practice engineering. It is thus apparent that an engineer-in-training is a type of apprenticeship which in no way can be considered as the "equivalent" of practicing engineering or recognition as a professional engineer.

The agency's finding that Petitioner has failed to establish his qualification for the requested preference involves no error of law and is more than adequately supported by the evidence.

■ Petitioner's contention that the Immigration and Naturalization Service is estopped to deny that Pacific States

University is an accredited institution because it is included on the Attorney General's list of schools approved for foreign students who are in this country on student visas, does not require extensive discussion and is without merit. Estoppels against the government are not favored and should be declared only where the interests of justice clearly so require. 31 C.J.S. Estoppel § 138, p. 675. Although the doctrine of estoppel has been applied against the United States in some tax contexts,[10] Petitioner cites no cases in which the government has been held to be estopped under the Immigration Laws. The only cases which have been found involving estoppel against the government in an Immigration context are holdings refusing to apply an estoppel.[11] However, some of these opinions suggest that the Court would apply the doctrine in a proper case.

Even assuming *arguendo* that the doctrine of estoppel may properly be asserted against the government in an immigration context, there is no factual basis in the instant case for its assertion. There is no evidence that Petitioner relied to his detriment on the government's recognition of Pacific States University for immigrants on student visas. Petitioner did not take the stand in the administrative hearing nor was any affidavit from him submitted. He could not have relied on Pacific States presence on the Attorney General's list of approved schools when he came to this country, because he enrolled in three other colleges, all apparently accredited, before he enrolled at Pacific States five years after his arrival here. In entering Pacific States he could not have been misled into believing that a degree from that school would qualify him for preference status. When he first enrolled at Pacific States in 1964 there *was* no

preference status requiring a degree. The preference status under the law which was in effect in 1964, depended on whether his skills were "urgently needed". (Former 8 U.S.C. § 1153(a)(1))

■ When the statute was changed in 1965, Petitioner had been in the country for six years and would be expected by that time to have had some familiarity with the differences between various educational institutions and would be on notice of the *caveat*, quoted above, contained in the Attorney General's approved list. In short, no factual basis for estoppel appears in the record even if an estoppel could be recognized as a matter of law.

This memorandum of opinion will constitute findings of fact and conclusions of law. The government's motion for summary judgment is ordered granted. The United States Attorney will submit a proposed judgment in conformity herewith.

10. See, e. g., Schuster v. C.I.R., 312 F.2d 311 (9th Cir. 1962); Walsonavich v. United States, 335 F.2d 96 (3d Cir. 1964).

11. Kalatjis v. Rosenberg, 305 F.2d 249 (9th Cir. 1962); Petition of Moser, 182 F.2d 734 (2d Cir. 1950); United States ex rel. Lapides v. Watkins, 165 F.2d 1017 (2d Cir. 1948); and Chin Kai Su v. Dulles, 157 F.Supp. 190 (E.D.N.Y.1957).