238 F.2d 584
 DeForrest LILLY and Robert R. Jones, doing business in the firm name and style of Mullens T. V. Cable Service, in their individual right as taxpayers, and for and on behalf of and for the use and benefit of subscribers to the wire services of Mullens T. V. Cable Service, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 7236.
 United States Court of Appeals Fourth Circuit.
 Argued October 8, 1956.
 Decided November 7, 1956.
 
 Frederick T. Kingdon, Mullens, W. Va., and Herbert Emerson Forrest, Washington, D. C., (Arthur R. Kingdon, Mullens, W. Va., on the brief), for appellants.
 Louise Foster, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Hilbert P. Zarky, Attys., Dept. of Justice, and Duncan W. Daugherty, U. S. Atty., Huntington, W. Va., on the brief), for appellees.
 Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.
 PARKER, Chief Judge.
 
 
 1
 This is an appeal from a judgment in favor of the United States in a suit by taxpayers to recover excise taxes paid under protest. Taxpayers are partners engaged in operating a community television antenna system at Mullens, West Virginia. The taxes in question were imposed under section 3465(a) (2) (B) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3465(a) (2) (B) and sections 4251 and 4252(e) of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 4251, 4252(e), imposing taxes of 8% on amounts paid for "wire and equipment" service. The question in the case is whether the amounts paid for connection with the radio antenna and coaxial cable maintained by the taxpayers are paid for "wire and equipment" service within the meaning of the taxing statutes, as held by the court below. We do not think that they are.
 
 
 2
 The portion of the statute relied on by the government is a part of a subchapter entitled "Telegraph, Telephone, Radio, and Cable Facilities". Subsection (a) (1) of section 3465 of that subchapter imposes a tax on telephone, telegraph, cable or radio dispatches or conversations. Subsection (a) (2) (A) of section 3465 imposes a tax of 10% on the amount paid for "leased wire, teletypewriter, or talking circuit special service." Subsection (a) (2) (B), which is the portion of the statute here relied on imposes a tax of 8% on the other means ordinarily employed in commercial communication, i. e. wire and equipment service ordinarily furnished by telephone or telegraph companies. That subsection is as follows:
 
 
 3
 "(B) A tax equivalent to 8 per centum of the amount paid for any wire and equipment service (including stock quotation and information services, burglar alarm or fire alarm service, and all other similar services, but not including service described in subparagraph (A)."
 
 
 4
 The subsection quoted was added to the statute by the Revenue Act of 1941. The Internal Revenue Code of 1939, by section 3465(b), had merely imposed a tax of 5% on "the amount paid to any telegraph or telephone company for any leased wire or talking circuit special service". The base of taxation was expanded by the Revenue Act of 1941 to specify more clearly the types of service taxed, to impose the tax where the service is rendered within a local exchange area and to tax like services when furnished by companies other than telephone and telegraph companies. Conference Report No. 1203, 77th Congress, 1st Session. In submitting the changes to the House of Representatives, Representative Doughton said:
 
 
 5
 "The 5 percent tax on leased wires and talking circuits is retained and the base is expanded to include wire services such as teletypewriter service, burglar alarm service, news ticker service, stock quotation and information services and the like. The exemption provided by existing law for the services of this type utilized by a common carrier, telephone or telegraph company, or a radio broadcasting company or network in the conduct of its business as such, is continued by the bill.
 
 
 6
 "This section also amends 3465(b), which imposes a tax with respect to leased wires and talking circuits special service, to more clearly specify the types of service subject to tax, to impose the tax where the service is rendered within a local exchange area and to also tax like service furnished by companies other than telegraph and telephone companies. The present tax is restricted to service furnished by a telegraph or telephone company."
 
 
 7
 The Internal Revenue Code of 1954 imposes the tax on amounts paid for telephone service, telegraph service, leased wire, teletypewriter or talking circuit special service and wire and equipment service in a single section, imposing the tax on amounts paid for what it terms "communication services or facilities."[1]
 
 
 8
 No community television antenna system was in existence when the statute first imposing this tax was passed, and such systems could not have been in contemplation of Congress. If they furnish a service similar to the one taxed, they would, of course, fall within the reach of the statute; but they do not furnish a similar service, but what is a necessary adjunct to a television receiving set in those localities where the antennae ordinarily used for receiving sets are not sufficient. The ordinary antenna on the housetop or on top of the receiving set picks up waves or signals from the television station and the receiving set through its tubes transmutes them into sound and motion pictures. Where the receiving set is far distant from the sending station or is in a valley surrounded by mountains, the waves or signals cannot be picked up by the antennae ordinarily used and it becomes necessary to set up antennae on a mountain or other vantage point and communicate the waves or signals thence to the receiving sets by wire. The facts with respect to the antenna system of taxpayers is thus stated in an exhibit to their complaint, which is accepted as correct by the government, viz.:
 
 
 9
 "The activities of the Mullens TV Cable Service consist of the gathering, transmission and delivery of broadcast sound and picture television signals from owned central high towers located on land leased or owned by it in or near Mullens, West Virginia. The signals are gathered and transmitted from antennae on the high towers by wire cable to other main wire cables running along the streets and alleys of the City of Mullens and vicinity. The picture and sound signals gathered from the various broadcasting stations and taken into the system are sustained and strengthened at intervals along the cable lines by means of equipment located at the high towers and along the main line cables.
 
 
 10
 "For this service, each subscriber pays initially $156.00, of which $120.00 is charged for permanent continuing connection services, and $36.00 for one year's signal service. The initial connection service charge covers the service of making the connection from the main line to the subscriber's premises and the connection of the private line to the subscriber's television receiving, or signal conversion, equipment. This charge covers the same service when a subscriber moves from one house to another in the service area of Mullens. After the first year, each subscriber pays $36.00 in advance, for each year's signals service.
 
 
 11
 "The cable service company does not furnish either by lease, sale or gift any television receiving or signal conversion equipment to subscribers. In order that the subscriber may use and enjoy the various signals transmitted over the wire connected to his premises, he must purchase from another a television receiving or signal conversion set, at substantial cost. The cable company has no interest or right in any receiving set or other equipment purchased by any subscriber kept and used on his premises, but provides the service only of connecting any sets he purchases from others to the end of the signal wire at its point of entry to the subscriber's premises, as part of the connection services to which the subscriber is entitled on payment of the initial connection services fee.
 
 
 12
 "In rolling, level or flat terrain individual antennae equipment is ordinarily purchased by, and placed on the property of, a set owner. This individual equipment, in such areas, ordinarily satisfactorily gathers the original signal broadcast by a television station even a substantial distance from the set. The central high tower-cable method of television signal transmission is generally used, and is necessary, only in rugged and mountainous areas a substantial distance from broadcasting stations because the broadcast television picture signals, being straight waves, are subject to deflection, obstruction and dissipation by terrain features. This type of television signal transmission was developed practically and first put into operation after 1943."
 
 
 13
 We think it clear that this community antenna service was a mere adjunct of the television receiving sets with which it was connected and was in no sense a communication service or facility such as it was the purpose of the statute to tax. It is well settled that taxing statutes are strictly construed against the government and in favor of the taxpayer. Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858; Miller v. Standard Nut Margarine Co., 284 U. S. 498, 508, 52 S.Ct. 260, 76 L.Ed. 422. It is equally well settled that a statute is construed in the light of its purpose, which here was to tax amounts received from commercial communications services and facilities, not television equipment, and that general terms are limited by a specification of particulars to things of the same general class. F. W. Fitch Co. v. United States, 323 U.S. 582, 65 S. Ct. 409, 89 L.Ed. 472; White v. Aronson, 302 U.S. 16, 58 S.Ct. 95, 82 L.Ed. 20. When the rule noscitur a sociis is applied here (United States v. Ryan, 284 U.S. 167, 176, 52 S.Ct. 65, 76 L.Ed. 224), there is no reason to impose upon payments for what is essentially television equipment a tax levied upon amounts paid for commercial communications services, such as telephone and telegraph messages, leased wire, stock tickers or burglar or fire alarm services.
 
 
 14
 Because wire is used by the antenna system and some sort of electrical equipment is necessary to boost the electric current on the wires, it is argued that there is a "wire and equipment service" within the meaning of the statute. It is clear, however, that this is not a communications facility or service, and that, if it be considered a service, it is in no way similar to the services which are specifically mentioned in the statute and which illustrate the sort of services that it was the purpose of Congress to tax. A stock ticker furnishes a communications service like a telephone or telegraph message, or a teletypewriter. A burglar alarm or a fire alarm service likewise furnishes a communications service notifying the proper authorities of burglary or fire. But this is not true of the antenna system. It merely furnishes an attachment to a television receiving set which enables a set disadvantageously located to operate like an ordinary set, — which, in other words, enables a receiving set in Mullens to operate like ordinary television sets operate in Huntington or Charleston without such attachment. Congress has never taxed television transmission or reception. It is admitted that a booster station maintained by a transmitting station would not be subject to the tax; and we see no reason why owners of receiving sets should be taxed upon amounts paid for equipment analogous to a booster station to make their sets workable. It seems highly improbable that Congress should ever intentionally levy such a tax; for the tax falls on those who pay for the service or facilities and it would be utterly unreasonable to impose a tax on those owners of receiving sets that are so situated that they cannot be operated without connections of this sort and impose no tax on owners of ordinary receiving sets who need not incur such expense. Even if the language of the statute were broad enough to cover amounts paid for connection of a radio receiving set to an antenna system, and we do not think that it is, the case would fall clearly within the rule stated in United States v. Kirby, 7 Wall. 482, 486, 19 L. Ed. 278, as follows:
 
 
 15
 "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter."
 
 
 16
 See also Holy Trinity Church v. United States, 143 U.S. 457, 459-462, 12 S.Ct. 511, 36 L.Ed. 226; Law Ow Bew v. United States, 144 U.S. 47, 12 S.Ct. 517, 36 L.Ed. 340; American Tobacco Co. v. Werckmeister, 207 U.S. 284, 293, 28 S.Ct. 72, 52 L.Ed. 208; Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L. Ed. 413; United States v. Rippetoe, 4 Cir., 178 F.2d 735, 737; Commonwealth of Virginia v. Cannon, 4 Cir., 228 F.2d 313, 317.
 
 
 17
 We have given careful consideration to the memorandum opinion of the learned judge below and of the opinion in the case of Pahoulis v. United States in the Western District of Pennsylvania, 143 F.Supp. 917, to which our attention has been called; but we cannot agree that amounts paid for connection with a community antenna system are covered by the taxing statute relied on. The judgment appealed from will accordingly be reversed and the case will be remanded with direction to enter judgment for the taxpayers.
 
 
 18
 Reversed and remanded with directions.
 
 
 
 Notes:
 
 
 [1]
 That section and the section defining wire and equipment service as used therein are as follows:
 "§ 4251. Imposition of tax. There is hereby imposed on amounts paid for the communication services or facilities enumerated in the following table a tax equal to the percent of the amount so paid as is specified in such table:
 Rate of tax
 Taxable service Percent

 Local telephone service 10
 Long distance telephone
 service 10
 Telegraph service 10
 Leased wire, teletypewriter
 or talking circuit special
 service 10
 Wire and equipment service 8
 The taxes imposed by this section shall be paid by the person paying for the services or facilities."
 "(e) Wire and equipment service. — As used in section 4251 the term `wire and equipment service' shall include stock quotation and information services, burglar alarm or fire alarm service, and all other similar services, but not including service described in subsection (d) of this section. The tax imposed by section 4251 with respect to wire and equipment service shall apply whether or not the wires or services are within a local exchange area."