Gust PAHOULIS, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant.

No. 12066.

United States Court of Appeals
Third Circuit.

Argued Feb. 5, 1957.

Decided March 22, 1957.

Edward P. Morgan, Washington, D. C. (George J. Barco, Barco & Barco, Meadville, Pa., Herbert E. Forrest, Washington, D. C., E. Stratford Smith, Welch, Mott & Morgan, Washington, D. C., on the brief), for plaintiff-appellant.

Louise Foster, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., D. Malcolm Anderson, Jr., U. S. Atty., Western District of Pennsylvania. Lee A. Jackson, Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This appeal involves excise taxes assessed under Section 3465(a) (2) (B) of the Internal Revenue Code of 1939, 26 U.S.C. § 3465(a) (2) (B) upon amounts paid for use of a community television antenna by Gust Pahoulis. The government prevailed below. The opinion of the district court is reported at 143 F.Supp. 917.

The City of Meadville, Pennsylvania, is a relatively poor television reception area because of its geographical location in relation to the transmitting television stations and because it lies almost entirely within a valley surrounded by high hills. To make available better television reception, Meadville Master Antenna, Inc., was formed and it constructed a large antenna on one of the hills surrounding the city. To this antenna, a cable system was installed with special amplifying equipment being incorporated to maintain the necessary strength of the television signal. The cables were strung on utility company poles, and ex-

tended from these cables were open end lead lines to individual residences and other locations where the antenna service was desired. To those lines, the subscribers attached conventional television receivers to effect the television reception of the signals delivered by the master antenna system.

For the privilege of connecting to the system, the individual subscribers were billed in writing for installation and monthly service charges, and on those charges, paid to Meadville Master Antenna, Inc., an eight per cent tax was levied and collected by the Director of Internal Revenue under the provisions of Section 3465(a) (2) (B) of the Internal Revenue Code of 1939.

The taxpayer, a resident of Meadville, subscribed to the service offered by Meadville Master Antenna, Inc. During the periods April 1, 1953, through December 31, 1953, and June 1, 1954, through December 1, 1954, $70.49 was collected from him as a tax imposed under the above section of the Internal Revenue Code.

Timely claims for refund were filed with the District Director of Internal Revenue. On their rejection this suit followed. Thereafter both the taxpayer and the government moved for summary judgment. The trial judge denied the taxpayer's motion and granted that of the government. In his decision the judge followed an unreported district court opinion since reversed by the Court of Appeals for the Fourth Circuit, Lilly v. United States, 238 F.2d 584.

The problem is whether the service charge for a community television antenna is within the intendment of Section 3465(a) (2) (B) which provides:

"(B) A tax equivalent to 8 per centum of the amount paid *for any wire and equipment service* (including stock quotation and information services, burglar alarm or fire alarm service, and all other similar services, but not including service described in subparagraph (A))." (Emphasis supplied).

There must be some reasonable limitation of the underlined phrase "any wire and equipment service" otherwise rentals of televisions, radios, record players, public address systems and a host of other electrical gadgets would be swept under the levy; a result clearly not intended. As pointed out by the appellate court in the Lilly case, supra, the legislative history of the section indicates it was intended to reach only the expressed services and similar services. Examining the expressed services and the regulations regarding them, T.R. 42 (1942 ed.) as amended, Section 130.38(b),[1] we find the common characteristic among the expressed services to be that the wire and equipment service involved

1. "In general, wire and equipment service includes the following and similar services:
"(1) Burglar, fire, or other alarm service, where the service consists of channels furnished between a remote point and the subscriber's office or a police or fire station, or a central station, and over which a signal is transmitted in the case of illegal entry, fire, leakage, etc.
"(2) Wires and equipment installed on the subscriber's premises for burglar, fire or other alarm service, not owned by the subscriber, but for the use and maintenance of which he pays a periodic fee, whether or not the wires and equipment are located wholly within his premises.
"(3) Channels furnished between a point of origin and the subscriber's premises over which are given stock and bond market quotations and reports, racing results, baseball scores and other sporting results, news items, musical programs, weather reports, the time, etc. (For exception, see section 130.45).
"(4) Metering services, including channels and equipment, furnished between a remote point and the subscriber's office, over which signals are transmitted so that the subscriber may obtain information as to a given condition at the remote point, such as water level, water pressure, gas pressure, etc.
"(5) Remote control channels furnished between a remote point and the subscriber's premises which will actuate an instrument at the remote point, such as the starting and stopping of a radio transmitter, etc."

in each instance communicates the electronic signal from the point of origin to the point of reception. In this case the service is supplied as an aid in reception only. The wire and equipment have nothing to do with the origin of the electronic signal which occurs at the television station many miles away and wholly separate from the service supplied by the community television antenna company. Accordingly, this service is substantially dissimilar from the expressed services and outside the reach of the tax. Under the circumstances, it is unnecessary to consider other questions raised by the appellant including a constitutional attack on the tax for lack of uniformity, geographical or otherwise.

The judgment of the district court will be reversed and the case remanded with directions that judgment be entered in favor of the plaintiff for the amount of the tax paid by him.