UNITED STATES of America, Appellant,

v.

COMMUNITY TV, INC., a corporation, Appellee.

No. 7407.

United States Court of Appeals Tenth Circuit.

Feb. 4, 1964.

Rehearing Denied March 12, 1964.

798

C. Guy Tadlock, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harold C. Wilkenfield, Norman H. Wolfe, Attys., Dept. of Justice, B. Andrew Potter, U. S. Atty., and Leonard L. Ralston, Asst. U. S. Atty., were with him on the brief), for appellant.

Donald Royse, Elk City, Okl., and Eugene Kuntz, Oklahoma City, Okl. (Royse & Meacham, Elk City, Okl., Reuben Sparks, Woodward, Okl., and McAfee, Taft, Cates, Kuntz & Mark, Oklahoma City, Okl., were with them on the brief), for appellee.

Before MURRAH, Chief Judge, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

This is an appeal by the Government from the granting of a refund to appellee Community TV, Inc. of federal excise taxes on payments it made for microwave relay services. The tax was assessed under Section 4251 of the Internal Revenue Code of 1954 for periods before January 1, 1959, on "leased wire, teletypewriter or talking circuit special service" under Section 4252(d), and after January 1, 1959, as "wire mileage service" under the then Section 4252(e).

Community TV, Inc. was engaged in providing community television antenna service to its customers in Elk City, Oklahoma. From 1954 until June 15, 1958, Community received television signals from stations in Oklahoma City by means of a high tower antenna and distributed the signals on a cable network to television sets owned by its customers. In 1958 Community proposed to change the operation to include a microwave relay system at a point between Elk City and Oklahoma City to be operated with its community antenna service as a single system. Federal Communications Commission regulations however prohibited it from operating both services. To satisfy these FCC requirements, Western TV Relay, Inc. was organized for the purpose of owning and operating common carrier microwave relay facilities. Each of the three equal shareholders of Community became the owner of thirty-six shares of Western stock and two other persons each became the owner of one share of Western to comply with the requirements of the FCC.

Since June 15, 1958, Western, by its tower and antenna near Weatherford, Oklahoma, has received signals from television stations in Oklahoma City about eighty miles east, and relayed them by microwave to its reflector and receiver equipment in Elk City. There the signal is reconverted and sent over Community's cable network to its customers' television sets. Western's equipment in Elk City is located on a tower owned by Community TV, Inc.

Pursuant to FCC requirements, Western charged a tariff for its services to Community. On April 29, 1959, a ruling was issued by the Internal Revenue Service that this tariff charged by Western for its signal relay service was subject to the excise tax imposed by Section 4251 of the Internal Revenue Code of 1954. Community refused Western's attempts to collect the tax. A direct assessment was made against Community inasmuch as the Code provides that the tax shall be paid by the person paying for the services or facilities. On August 8, 1961, Community paid these excise taxes plus interest, and following rejection of its claim for refund commenced this refund action. The District Court held in favor of Community and ordered a refund.

There are two holdings of the trial court which are in issue here. It held that the service rendered by Western to Community prior to January 1, 1959, is not "leased wire, teletypewriter or talking circuit special service," as defined by Section 4252(d) of the Internal Revenue Code of 1954, and that the payments made for such service are not subject to the excise tax imposed by Section 4251 of the Code. Secondly the trial court held that the service rendered by Western to Community on and after January 1, 1959, is not "wire mileage service," as defined by Section 4252(e) of the Internal Revenue Code of 1954 as amended by the Excise Tax Technical Changes Act of 1958 (Section 133), and that the payments made for such services were also not subject to the excise tax imposed by Section 4251 of the Code. Since the period of time here in question, the law has been amended to specifically exclude the type of service paid for by appellee in the case at bar.

The Government, as appellant, argues that the microwave transmissions here involved are radio waves and now expressly come under the tax section by virtue of the definitions added to the act in 1958. Appellant then argues that when "wire mileage service," with its "radio" definition, was substituted for "leased wire, teletypewriter or talking

circuit special service," the Congressional Committee reports indicate that the new wording was to be a general residual grouping, as was the old. S.Rep.No. 2090, 85th Cong., 2d Sess., p. 47, U.S. Code Cong. & Ad. News 1958, p. 4395. Appellant's third point is that the Commissioner has ruled that "wire mileage service" includes microwave relay transmission of television signals by a telephone company which charged a television service company to relay TV signals to an area beyond normal TV broadcasting range. Rev.Rul. 62–126, 1962–2 Cum.Bull. 254. Also appellant urges that microwave transmissions of TV signals are in the same class as telegraph, telephone, and radio and TV broadcasting, and it is so classified and regulated by the FCC. 47 C.F.R. §§ 21.705 and 21.706. Also it argues, by changing the law in 1962 to eliminate the service here considered from the tax, Congress recognized that such services as involved here were taxable. S. Rep.No.1616, 87th Cong., 2d Sess., p. 7, U.S.Code Cong. & Ad. News 1962, p. 1771. The Government also states that Western was a common carrier of communications during the period in issue performing an independent function, and the tax was not imposed upon amounts paid for the antenna system, but was imposed on the amounts paid for the separate microwave system.

Appellee's points relate to the doctrine that taxes can be levied only for services specifically mentioned, and that the systems are an extension of the individual receiving sets. Thus it urges that the matter is governed by Lilly v. United States, 238 F.2d 584 (4th Cir.), decided in 1956, and by Pahoulis v. United States, 242 F.2d 345 (3d Cir.), decided in 1957.

Both of the cited cases concerned the taxing of community television antenna systems. The holdings in these two cases are pertinent on part of the question before us, and we will consider them briefly. In Lilly v. United States, supra, taxes were imposed under 26 U.S.C.A. §

3465(a) (2) (A) and under 26 U.S.C.A. §§ 4251 and 4252(e) (Internal Revenue Code of 1954) on amounts paid for "wire and equipment" service. The court held that the amounts paid by subscribers to connect their television sets to a community television antenna system were not paid for "wire and equipment service" within the meaning of the statutes. The court noted that community television antenna systems were not in existence when the statute first imposing the tax was passed and hence such systems could not have been in the contemplation of Congress. The court rejected the argument that there was a "wire and equipment service" within the meaning of the statute because wire was used by the antenna system and some sort of electrical equipment was necessary to put the electric current on the wires. In the case at bar, the Government is in the position of arguing that the absence of wires, i. e., the microwave system, brings the system under "wire mileage service."

Pahoulis v. United States, 242 F.2d 345 (3d Cir.), involved a community TV antenna similar to that in Lilly. The court held that Section 3465(a) (2) (B) of the Internal Revenue Code of 1939 and the tax it imposed for "any wire and equipment service" did not apply to this community TV antenna system. The court said that some limitation had to be placed on the phrase. The court agreed with Lilly that the legislative history of the section indicates that it was intended to reach only the expressed and similar services. It noted that the common characteristic of the express service was that the wire and equipment communicates the signal from the point of origin to the point of reception, thus the service was supplied only as an aid in reception, and that the wire and equipment have nothing to do with the origin of the signal. The court accordingly held that the service was dissimilar from the expressed and defined services and outside the reach of the tax.

■ Without question, a taxing statute must describe with some certain-ty the transaction, service, or object to be taxed, and in the typical situation it is construed against the Government. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858. The section here concerned refers to "talking circuit special service" and "wire and equipment service." As indicated above, the "talking circuit special service" phrase was contained in the 1939 Code and thus before the use to any appreciable extent of microwaves as a device to transmit television programs. This fact is of course not determinative of the issue, but when the statute is examined as it existed before its amendment in 1958 it is apparent, especially from the definitions, that this service was not contemplated. The examples contained in the act are unrelated and are dissimilar to microwave transmissions of television programs. Some of these examples are stock quotation services, information services, burglar or fire alarm service, " * * * and all other similar services. * * *" There appears to be no definitive Treasury regulations before the section was amended in 1958, and the subsequent ones did not serve to broaden the statute. By 1958 the use of such systems was widespread, and in that year Congress first included "radio circuit service" under Section 4252(e). Thus we hold that the act before the enactment of Section 133 of the Excise Tax Technical Changes Act of 1958 did not cover the service here under consideration.

■ Congress in 1958 set about a revision of the definitions and classifications in order to conform the communications excise tax statute to the technical changes which had taken place. As the Senate Committee Report mentioned, the changes were to "bring the law into conformity with the different types of services actually provided." S.Rep.No.2090, U.S.Code Cong. & Ad.News, 85th Cong., 2d Sess., vol. 3, p. 4439. This reference states the reason for the changes and indicates that certain services theretofore in use had not been covered. The amendment in 1958, as mentioned, redefined the "leased wire, teletypewriter or talking

circuit special service" as "teletypewriter exchange service" and "wire mileage service." Congress then included in the definitions of the communication services the term, "radio-telephone service" and also "radio circuit service" as services taxable under Section 4251. "Radio" generally is the transmission and reception of signals through the use of electric waves, ordinarily sent through the atmosphere and above, but in any event without using connecting wires. "[T]he transmission and reception of electric impulses or signals by means of electric waves without a connecting wire. * * *." Webster's Third New International Dictionary Unabridged, 1961 Ed. In the system here concerned the television signals as emitted by the broadcasting stations were converted by Western into microwave, another form of electrical waves, again transmitted through the air without the use of wires to appellee's facilities where in yet another form they were sent out over its wires to the television viewers. The Government argues that after the 1958 change, the law covers the same categories as it did before. This is however not persuasive because of the express purposes of the change as indicated above, and because of the expanded wording of the definitions. Microwave transmission is here performed by a common carrier corporation separate from appellee, although with essentially the same stockholders. This service is on radio frequencies prescribed by the Federal Communications Commission for microwave transmission. 47 C.F.R. § 21.701.

The microwave relay service here under consideration is a "radio circuit service" and consequently is a "wire mileage service" as used in Section 133 of the Excise Tax Technical Changes Act of 1958.

Appellee-taxpayer contends that payments for microwave services, if within the act, are nevertheless included in the exemptions of Section 4253(b) of the 1954 Code paid for services used as in the conduct of its own business. Community however is not a broadcaster.

The tax here considered is on the payment for the microwave services furnished by the common carrier, Western, and is not within the exemption.

Thus the payments for service here considered are taxable as to services performed by Western after the effective date of the 1958 amendments, but not before.

The judgment is modified in accordance with this opinion and as so modified is affirmed.