John **WALSONAVICH**, Individually and Trading as Service Electric Company, Appellant,

v.

**UNITED STATES** of America.

No. 14551.

United States Court of Appeals Third Circuit.

Argued Feb. 4, 1964.

Decided June 24, 1964.

Harvey B. Levin, Philadelphia, Pa. (Victor R. Bieber, Philadelphia, Pa., on the brief), for appellant.

Alan D. Pekelner, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., of counsel, on the brief), for appellee.

Before McLAUGHLIN, GANEY and SMITH, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an action for the refund of certain excise taxes paid for the calendar years 1951–1952. The problem presented arises out of the refund provisions of the 1939 Internal Revenue Code. It is sui generis, and has been eliminated under the 1954 Code.

During 1951 and 1952, John Walsonavich (hereinafter referred to as the taxpayer) was in the business of supplying television antenna service to the public. Pursuant to Section 3465(a) (2) (B) of the 1939 Internal Revenue Code and certain Revenue Rulings (See Rev. Ruling 88–C. B. 1953–1), the Commissioner assessed excise taxes against him in the amount of $12,446.67.[1] The taxpayer paid these taxes sometime in 1952, and there-

1. The Government's brief allocates the tax in the following way:

"For the period January 1951 through June 30, 1952, the Commissioner assessed excise taxes of $5,379.87, a penalty of $1,276.40 and interest of $251.53. For the period July 1, 1952, through December 31, 1952, the Commissioner assessed excise taxes totalling $5,538.87."

after paid the tax due, concurrently for the years 1953–1956 and part of 1957.

On December 10, 1954, he entered into an extension agreement Form 872–B with the Commissioner of Internal Revenue.[2] This agreement was entitled "Consent Fixing Period of Limitations Upon Assessment of Miscellaneous or Excise Taxes". It provided in part that "the amount of said taxpayer's liability for Excise Tax-Wire Service tax * * * due for the period January through December, 1951, may be assessed at any time on or before June 30, 1956."

On March 14, 1956 a second agreement was made providing that the taxpayer's "liability for Leased Wire Excise Tax * * * due for the period January 1, 1951 to December 31, 1952 may be assessed at any time on or before June 30, 1957."

Meanwhile, the applicability of the leased wire excise tax to television antenna service was challenged in numerous instances and test cases initiated in this and the Fourth Circuit. Both courts of appeals decided that the leased wire excise tax did not apply to community television antenna service. Pahoulis v. United States, 242 F.2d 345 (3 Cir. 1957); Lilly v. United States, 238 F.2d 584 (4 Cir. 1956).

On January 28, 1957 the taxpayer filed his claim for refund. The Government refunded the taxes paid for the period 1953–1957 but on February 14, 1961, ultimately refused to refund the taxes for 1951 and 1952 as barred by the Statute of Limitations. The taxpayer then instituted this action in the United States District Court for the Eastern District of Pennsylvania. The Government moved to dismiss the complaint claiming that the refund claim was barred by the Statute of Limitations. The court granted the Government's motion and this appeal followed.

The excise taxes in issue were assessed under the 1939 Code, 26 U.S.C. § 3465 (a) (2) (B) (1952) (war rates 26 U.S.C. § 1650 (1952)); and the taxpayer seeks a refund of the taxes paid as "erroneously or illegally assessed or collected." 26 U.S.C. § 3313 (1952). He claims that the extension agreement he made with the Commissioner tolled the four year Statute of Limitations for filing his refund claim. 26 U.S.C. § 3313 (1952).

Unlike the 1954 Code which provides for an assessment, collection and refund procedure, generally applicable to *all* taxes, Subtitle F, 26 U.S.C. § 6011 et seq. (1958), the 1939 Code provides for a separate treatment of income, profits, estate and gift taxes as distinguished from miscellaneous taxes, and the excise, import and temporary taxes. Jones v. Liberty Glass Co., 332 U.S. 524, 533, 68 S.Ct. 229, 92 L.Ed. 142 (1947).

That separate statutory treatment is here highlighted. Under the income tax provisions of the 1939 Code, Subtitle A, Chapter 1, a taxpayer must file his claim for refund within three years from the time the return was filed or within two years from the time the tax was paid. 26 U.S.C. § 322(b) (1) (1952); but if

---

2. "Consent Fixing Period of Limitations Upon Assessment of Miscellaneous or Excise Taxes.
"John Walsonavich, T/A Service Electric Co., a taxpayer (or taxpayers) of Cor. Main & Pine Sts., Mahanoy City, Pa. and the Commissioner of Internal Revenue hereby consent and agree that the amount of said taxpayer's liability for Excise Tax-Wire Service tax, imposed by section 3465, of the Internal Revenue Code due for the period January through December, 1951, may be assessed at any time on or before June 30, 1956.

"The taxpayer and the Commissioner further agree that any assessment made within the extended period thus agreed upon may be collected in the same manner and subject to the same provisions and limitations as in the case of an assessment of any such tax made within the statutory period of limitations properly applicable thereto.

"Signed this 2nd day of December, 1954.
John Walsonavich
(taxpayer's name)
(Seal)    T. Coleman Andrews
Commissioner of Internal Revenue

the taxpayer and the Commissioner agree to extend the time for assessment of taxes as provided in Section 276(b), (Title 26 U.S.C.) the time in which a claim for refund may be filed is likewise extended. 26 U.S.C. § 322(b) (3) (1952). Under the excise tax provisions of the 1939 Code, any claim for refund had to be presented to the Commissioner within four years after the payment of the tax. 26 U.S.C. § 3313 (1952). However, there was no express provision for waivers or extension agreements.

Under the 1954 Code, the Commissioner is authorized to enter into such agreements for the assessment of excise taxes, which by statute also extend the time for filing refund claims. 26 U.S.C. §§ 6501(c) (4), 6511(c) (1). These limitation-on-refund provisions, however, did not apply to excise taxes assessed under the 1939 Code. 26 U.S.C. § 7851(a) (6) (A), (B) and (D) (1958).

Nevertheless the Commissioner on December 10, 1954 (perhaps purporting to act under the 1954 Code, which became law in most respects August 16, 1954 (c. 736, 68A Stat. 915)) entered into an agreement with the taxpayer: "Fixing Period of Limitations upon Assessment of Miscellaneous or Excise Taxes." A refund claim filed at the time of the agreement would have been timely (26 U.S.C. § 3313 (1952)) but relying on the apparent effect of the agreement, as he argued below, the taxpayer was lulled into a sense of security that pursuant to Section 6511(c) (1), or some similar provision, he would be able to file a timely refund claim within the period of agreement.

■ The Government takes the position that although the assessment period was extended by the agreement, this, of itself, is insufficient to extend the period for filing a refund claim.[3] Since the Revenue Act of November 23, 1921 (c. 136, Section 250(d), 42 Stat. 227, 265), Congress has provided for waivers by taxpayers, which, if accepted by the Commissioner, extend the time within which the Commissioner may *assess* taxes. See 26 U.S.C. § 276(b) (1952) (1939 Code); See also the 1928 amendments to the Revenue Act of 1926: Act of May 29, 1928, c. 852, 45 Stat. 869, 870 (to be distinguished from waivers of time in which assessed taxes may be collected) 1939 Code, Section 276(c). This statutory provision was designed solely for the benefit of the Commissioner. See Commissioner v. Hind, 52 F.2d 1075 (9 Cir. 1931). In 1942, however, Congress brought mutuality to such extension agreements. 1939 Code, 26 U.S.C. § 322(b) (3) (1952). Section 322(b) (3) provides that where an extension agreement is made as provided in Section 276(b), it effects a tolling of the Statute of Limitations for the filing of refund claims. This mutuality of benefit to be accorded such extension agreements (reincorporated in Section 6501(c) (4) and 6511(c) (1) of the 1954 Code is overlooked by the Government. See Claremont Waste Mfg. Co. v. Commissioner, 238 F.2d 741, 746 (1 Cir. 1956). The Government, conceding that the waiver is not "completely ineffective", wishes to give it an effect, inconsistent with the present Congressional desire to accord mutuality to such extension agreements. It argues that the agreement was a contract, which on its face extended only the time of assessment. The Government asserts that it received as consideration additional time to consider *further* assessments, while the taxpayer received as consideration the benefit of the Commissioner's not making a hasty assessment or a jeopardy assessment. While this may be true as to *future* assessments, both the original and the

---

3. Hart Glass Mfg. Co. v. United States, 73 Ct.Cl. 32, 48 F.2d 435 (1931) cited by the Government is obsolete in light of Section 322(b) (3) which came to the Code in 1942 (supra). Graper v. United States, 206 F.Supp. 173 (E.D.Wis.1962) is inappropriate because it deals with

"waiver of restrictions" under Section 272(d), i. e., that there be no assessment or collection until notice of deficiency is sent to taxpayer, or while a petition is before the Tax Court contesting the propriety of the tax.

second agreement specifically worked retroactively, to cover past periods (those in issue here: 1951–1952) which at the time of the agreement had already been assessed, and paid by the taxpayer. Little, if any benefit to taxpayer can be said to accrue as to this period, under the Government's theory, unless it were intended that, according to the statutory provisions governing extension agreements, the time for filing a refund claim was also extended.

We are satisfied that if this agreement is to be given any effect, it must be accorded the mutuality Congress intended with the addition of Section 322 to the 1939 Code.

But the Government has also argued that the 1939 Code does not expressly provide for the extension of the period of limitations for the assessment of excise taxes. While such authority is not expressly given the Commissioner, it is readily implied.

In Aiken v. Burnet, 282 U.S. 277, 51 S.Ct. 148, 75 L.Ed. 339 (1931) the taxpayer had executed a waiver, which the Commissioner accepted, extending the time in which the Commissioner may make an assessment of taxes for specified calendar years. At the time the waiver was filed with the Commissioner, Section 250(d) of the Revenue Act of 1921 was not in force, and there was no express provision under the then existing laws for the acceptance of such waivers. The waiver was upheld. Said Mr. Justice Brandeis, speaking for a unanimous court (at pp. 280–281, 51 S. Ct. at p. 149): "The limitation periods on assessment could be waived by the taxpayer in the same fashion as other statutes of limitations are waived. No reason appears why the Commissioner could not accept such a waiver prior to the act of 1921 * * * If authority was needed for the acceptance of such waivers, it may be found in the general broad administrative provisions of the respective acts."

See also Brown and Sons Lumber Co. v. Burnett, 282 U.S. 283, 287, 51 S.Ct.

140, 75 L.Ed. 343 (1931); Burnet v. Chicago Railway Equipment Co., 282 U.S. 295, 298, 51 S.Ct. 137, 75 L.Ed. 349 (1931); Independent I. & C. Storage Co. v. Commissioner, 50 F.2d 31, 33 (5 Cir. 1931); Mosier v. Goodcell, 49 F.2d 391, 392 (S.D.Calif.1931).

Said Mr. Justice Brandeis, in a later case (McDonnell v. United States, 288 U.S. 420, 424, 53 S.Ct. 410, 412, 77 L.Ed. 869 (1933)): "Prior to the 1921 act there was no statutory provision expressly authorizing waivers; but their execution had grown out of administrative practice * * * The purpose of Congress in enacting paragraph (d) of section 250 of the Revenue Act of 1921 and paragraph (c) of section 278 of the Revenue Act of 1924 was not to grant authority for waivers or to limit their effect, but to remove that doubt by expressly recognizing them." (citing the House and Senate Committee Reports).

■■ Though at the time of these decisions such waivers were unilateral (whereas the waiver in the case at bar is to be accorded mutuality) this does not affect the basic proposition that the Commissioner could enter into such agreement, notwithstanding the lack of express statutory authority to do so. Having made the extension agreement at bar, the Commissioner must accord it the mutuality the parties intended and the statute (Section 322) provides. In this situation we think it clear that the four year statute of limitations of Section 3313 of the 1939 Code was tolled by the agreement and that the taxpayer's claim was timely.

■ In addition to the above, the doctrine of equitable estoppel is of prime importance in the concededly unfortunate situation before us. Formerly when such a waiver was unilateral in fact and on its face in that it was for the benefit of the Commissioner alone, it was said that the taxpayer was by his assent to the waiver estopped from raising the defense of the statute of limitations. See Concrete Engineering Co. v. Commissioner, 58 F.2d 566, 568 (8 Cir. 1932).

These agreements have been since accorded mutuality and it is appropriate that the Government now be estopped from raising the Statute of Limitations against the taxpayer who seeks a refund. While it is true estoppel is to be rarely invoked against the United States (Schuster v. Commissioner, 312 F.2d 311, 317 (9 Cir. 1962), there are circumstances where the Government should be required by our law to stand behind the written agreements of a high public official like the Commissioner, cf. Routzahn v. Brown, 95 F.2d 766, 771 (6 Cir. 1938) in order to prevent manifest injustice. See Schuster v. Commissioner, 312 F.2d 311, 317 (9 Cir. 1962); The Exchange and Savings Bank of Berlin v. United States, 226 F.Supp. 56 (D.C. Md.1964).

 This is a case of a taxpayer who in good faith paid an 8% Lease-Wire Excise Tax in 1951–1952, the propriety of which the whole industry questioned, and which was ultimately declared "erroneously assessed." Test cases had been contemplated and perhaps initiated, and with these facts undoubtedly known to the Commissioner, the taxpayer entered into this agreement extending the time for assessment, on a government printed form covering excise taxes. This was at a time when a timely refund claim could have been filed, but relying on the mutuality Congress accorded such agreements the taxpayer was lulled into a sense of security that within the period of the agreement, he would be able to file a timely refund claim. Estoppel is surely applicable to those facts. The general rule regarding estoppel against the Government has been that the United States is not estopped by the acts of its officers and agents who without authority enter into agreements to do what the law does not sanction or permit; that those dealing with an agent of the Government must be held to have notice of limitations of his authority. Whiteside, et al. v. United States, 93 U.S. 247, 257, 23 L.Ed. 882 (1876); Utah Power & L. Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917); Ritter v.

United States, 28 F.2d 265 (3 Cir. 1928). But as we said in Ritter (at p. 267): "The acts or omissions of the officers of the government, if they be authorized to bind the United States in a particular transaction, will work estoppel against the government, if the officers have acted within the scope of their authority." And as we have above noted the Commissioner had the authority in this instance to enter into the agreement. It seems to us it necessarily follows that the Government should not be permitted either to accord the agreement only a limited effect or to abandon it entirely.

The judgment of the district court will be reversed and the district court directed to enter judgment in favor of the plaintiff for the amount of the excise taxes involved, $12,446.67 less any credits due the defendant-appellee.