Grant D. STRAHLE, Jr.

v.

The UNITED STATES.

No. 402–77.

United States Court of Claims.

July 18, 1979.

---

Keith A. Rosenberg, Washington, D. C., for plaintiff.

Sandra P. Spooner, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before DAVIS, NICHOLS and SMITH, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

EDWARD S. SMITH, Judge:

This military pay case comes before the court on the parties' cross-motions for summary judgment. The first question presented is whether the Government is estopped from denying the validity of its approval of plaintiff's request for an active duty term of indefinite duration. The second question is whether plaintiff was entitled to have his release from active duty as a commissioned officer in the U.S. Army Reserves reviewed by a board of officers prior to his release. After having carefully considered the submissions of the parties and having heard oral argument, we hold that the Government is not estopped to deny that its agent lacked the authority to extend plaintiff's active duty term from a 2-year commitment to an indefinite term and that plaintiff was not entitled to have his release reviewed by a board of officers. The defense of laches, asserted in defendant's answer, has not been pursued by defendant. In view of our holding, we find it unnecessary to consider the issue.

## I.

On April 27, 1968, plaintiff, Grant D. Strahle, Jr., Sergeant E5, 556th Military Police Company, applied for admission to Officer Candidate School (OCS). Because plaintiff had accumulated over 10 years of service he was required to request a waiver of time in service. The request for waiver was granted "contingent upon his proper execution of the statement acknowledging that he may not be able to complete ten years commissioned service and qualify for retirement benefits as a commissioned officer." Upon his graduation from OCS on June 27, 1969, he was commissioned in the United States Army Reserve as a second lieutenant and ordered to active duty in the Corps of Engineers, with a 2-year active duty commitment. On the day he graduated from OCS, plaintiff requested that his 2-year term of active duty be extended to one of an indefinite term, pursuant to Army Regulation (AR) 135–215 (Nov. 8, 1968). On August 1, 1969, plaintiff's request for retention on active duty for an indefinite period was granted by the Army Office of Personnel Operations.[1]

1. The August 1, 1969, letter signed by Lieutenant Colonel Gunter, reads as follows:

"1. Your request for retention on active duty under the provisions of AR 135–215 is

Personnel who become commissioned officers after serving more than 10 years as an enlisted member of the service are termed "20/10 officers." Most 20/10 officers are mandatorily relieved from active duty after the completion of 20 years of service. AR 635–100 (Aug. 24, 1973). In order to receive the retirement benefits of an officer, a 20/10 officer must serve as an officer for at least 10 of his 20 years of active duty. 10 U.S.C. § 3911 (1976). Most 20/10 officers are unable to serve 10 years as an officer before they are mandatorily retired after 20 years of service under AR 635–100, because more than 10 of their 20 years of service have been spent as an enlisted member. Thus, only the few 20/10 officers who are permitted to continue in the Army after 20 years of service qualify for retirement as an officer. The approval on August 1, 1969, of plaintiff's request for an indefinite term violated the order contained in the memorandum issued by the Assistant Deputy Chief of Staff for Personnel on August 1, 1968, directing the Office of Personnel Operations not to grant extensions of active duty for indefinite terms to 20/10 officers.

By letter dated July 24, 1972, plaintiff was informed that the approval of his request for an extension of his 2-year service as an officer was an error because the approval was contrary to the Army's policy "which limits officers with over ten (10) years active enlisted service to a maximum of five years active commissioned service." The expiration date of his active duty service as a commissioned officer was changed from "indefinite" to "June 26, 1974." On August 24, 1972, plaintiff executed an acceptance of the offer of retention to June 26, 1974, and acknowledged the limitation of his service. After his release from active

duty on June 26, 1974, plaintiff enlisted in the Army and, at the time this petition was filed on July 28, 1977, he was serving as an enlisted member of the U.S. Army.

On September 22, 1975, plaintiff requested that the Army Board for the Correction of Military Records (ABCMR) void his release from active duty and asserted that he was entitled to a hearing before a board of officers prior to his separation. On July 12, 1976, plaintiff was advised that his application for the correction of his military records had been denied on June 23, 1976. An Army Evaluation Board, which was convened on January 20, 1976, reviewed the records of 140 20/10 officers and determined that 121 of these officers would be permitted to remain on active duty after 20 years of service in order to qualify for retirement as officers. In this suit, plaintiff seeks damages against the Government for the active duty pay and allowances of an officer in the grade of captain (0–3) from the date of his release from active duty as a commissioned officer until the date of judgment, and requests that the court order his military records be corrected to show his retroactive restoration, effective June 24, 1974, to active duty in the rank of captain in the United States Army Reserves.

## II.

Plaintiff's attack upon his release from active duty as a commissioned officer is twofold. First, plaintiff contends that the Government is estopped to deny the validity of the August 1, 1969, letter from Lieutenant Colonel Gunter granting plaintiff an indefinite term as a commissioned officer.

---

approved effective 27 June 1971. You will be retained on active duty until further notice.

"2. You are advised that, under current regulations, you may be released from active duty for any one of the following reasons:

"a. Voluntary request in accordance with applicable regulations.

"b. Forced reduction in Army strength (accomplished by Department of the Army board action only).

"c. Promotion pass over as prescribed in applicable regulations.

"d. Failure to meet acceptable standards of efficiency or conduct.

"e. Completion of the maximum Reserve commissioned service or attainment of the maximum age, whichever occurs first, as prescribed in Section V and VI, AR 135–173.

"3. Your release from active duty by virtue of tenure of service will be in accordance with applicable regulations.

"BY ORDER OF THE SECRETARY OF THE ARMY:"

Plaintiff's second contention is that his removal from active duty was procedurally defective because he was entitled to have the removal reviewed by a board of officers before his release from active duty. For the reasons stated below, we hold that the Government was not estopped to void the grant of an indefinite term to plaintiff and that plaintiff was not entitled to have his removal passed upon by a board of officers before his release from active duty.

█ The Government cannot be estopped from denying the validity of the unauthorized acts of its agents.[2] Lieutenant Colonel Gunter, though originally authorized to grant terms for indefinite service under AR 135–215 was expressly prohibited in a directive from the Assistant Deputy Chief of Staff for Personnel to extend indefinite terms to 20/10 officers after August 1, 1968.[3] At the time Lieutenant Colonel Gunter ostensibly granted plaintiff an indefinite term in the service, exactly 1 year after the authority to do so had been expressly revoked by his superior officer, no one in the Army had authority to grant plaintiff an indefinite term. Thus, Lieutenant Colonel Gunter acted outside the scope of his authority when he informed plaintiff that he could serve an indefinite term. As this act was unauthorized, the Government is not bound by it and was free to substitute an active duty term with a specific expiration date.

Plaintiff's reliance upon the tax cases[4] in which estoppel has been successfully asserted against the Government is misplaced. In *Walsonavich, Simmons,* and *Schuster, supra* note 4, the acts of the Government's agent which estopped the Government were not unauthorized acts. Likewise, the cases[5] holding that the Government's attorneys were estopped to take inconsistent positions in lawsuits do not assist plaintiff because the Government's agents had the authority to take inconsistent positions.

In *Moser v. United States,* 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951), affirmative misrepresentations mislead a registered alien into believing that his invocation of an exemption from military service available to him under the terms of an 1850 treaty would not affect his right to become a citizen. When he applied for citizenship at a later date, he was told that Congress had prohibited the granting of citizenship to those, like Moser, who had claimed an exemption from military service. The Court

**2.** *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Utah Power & Light Co. v. United States,* 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917); *Operational Manuals, Inc. v. United States,* 205 Ct.Cl. 854 (1974); *Putnam Mills Corp. v. United States,* 202 Ct.Cl. 1, 479 F.2d 1334 (1973).

**3.** The August 1, 1968, directive reads, in part, as follows:
"1. The DCSPER is aware of the need to establish some type of program to enable continued utilization of recently commissioned OTRA officers who, under current policy, could not qualify for retirement under 10 U.S.C., Section 3911, prior to RFAD.
"2. However, in view of previously expressed Secretarial intent concerning OTRA officer tenure, it would be a distinct disservice to the officers concerned to offer them indefinite service contracts, particularly since such contracts infer prolonged tenure. Under anticipated Secretarial policy all OTRA officers will RFAD upon completion of 20 years AFS. Thus, these officers would be placed in a position of serving for prolonged periods and becoming accustomed to the environment of an officer, only to face RFAD under conditions in which they must return to an enlisted status for an additional 10 years before they could retire in their highest commissioned grade. Such a situation ultimately leads to a need for exceptions to policy or a compounded morale problem.
"3. In view of the foregoing plus the possibility of post-election cut-backs, the use of indefinite service contracts for these officers is not desired at this time. However, authority is granted to offer up to 3 years of extended active duty for such officers with the understanding that:
"a. No further extensions will be granted."

**4.** *Walsonavich v. United States,* 335 F.2d 96 (3d Cir. 1964); *Schuster v. Commissioner,* 312 F.2d 311 (9th Cir. 1962); *Simmons v. United States,* 308 F.2d 938 (5th Cir. 1962).

**5.** *United States v. 687.30 Acres of Land,* 319 F.Supp. 128 (D.Neb.1970), *appeal dismissed,* 451 F.2d 667 (8th Cir. 1971); *Kent Homes, Inc. v. United States,* 279 F.Supp. 650 (D.Kan.1967); *United States v. 35.00 Acres of Land,* 214 F.Supp. 792 (W.D.Mo.1962).

held that plaintiff did not knowingly and intentionally waive his right to apply for citizenship and that elementary fairness required that the waiver of such an important right as citizenship be an intelligent one. In addition, the Supreme Court specifically rejected the doctrine of estoppel as a reason supporting recovery in *Moser,* 341 U.S. at 47, 71 S.Ct. 553. In this case, plaintiff did not waive any existing rights. His complaint is that the Government should not be permitted to take away the indefinite term of active duty which it did not have authority to give plaintiff in the first instance. This is not a case in which the misrepresentations of an agent of the Government caused plaintiff to waive a vested right to which he was clearly entitled. Even if the Government had not discovered its error, plaintiff was not assured he would have had the opportunity to complete 10 years of service as a commissioned officer. Had the extension of the indefinite commitment to plaintiff been proper and authorized, plaintiff could have been released from active duty for one of the five reasons set forth in the commitment letter.[6]

█ It follows that, if the Government was not estopped to void and was not bound by the unauthorized approval of an indefinite term of active duty, it had the authority to convert the unauthorized indefinite commitment to a term authorized by Army policy. The Government did just that when it changed the expiration date of plaintiff's active duty commitment from indefinite to June 26, 1974. Plaintiff's contention that he could be released from active duty only as provided by the terms of the commitment letter is incorrect. Once the approval of an indefinite term was voided, the Government did not have to comply with or follow the release procedures applicable to those with authorized indefinite terms.[7]

Similarly, plaintiff's position that his release should have been reviewed by a board of officers under section XV of AR 635-100

is without merit because section XV applies only when a commissioned officer is involuntarily released from active duty. A review by a board of officers is not required when an officer is relieved, as was plaintiff, at the expiration of his active duty commitment. *Cf.* section XIV of AR 635-100.

Plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted; and the petition is dismissed.

---

6. *Supra* note 1.

7. Plaintiff abandoned at oral argument his position that he could not be released from active duty without first having the release acted upon by a board of officers as required by 10 U.S.C. § 1163.