868 F.2d 1277
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
NORTH SANTIAM SAND & GRAVEL, INC., Appellant,
v.
The UNITED STATES, Appellee.
 No. 88-1315.
 United States Court of Appeals, Federal Circuit.
 Feb. 2, 1989.
 
 Before MARKEY, Chief Judge, NIES and MAYER, Circuit Judges.
 PER CURIAM.
 
 DECISION
 
 1
 The decision of the United States Department of Agriculture Board of Contract Appeals, 88-2 B.C.A. (CCH) p 20,588, upholding the Forest Service's reduction of the price paid North Santiam Sand & Gravel, Inc., for failure to meet contract specifications, is affirmed.
 
 OPINION
 
 2
 North Santiam's attempt to avoid the equitable price reduction because the acceptance tests were faulty is unconvincing because North Santiam was contractually obligated to conduct acceptance testing, not the government. Section 401.21 of the Forest Service Standard Specifications for Construction of Roads and Bridges governed testing of the aggregate mixture. After a disagreement over who was responsible for testing, the Forest Service issued Work Order B, which said, "You [North Santiam] are responsible for all testing required by the contract except where it states that testing will be done by the Government or Engineer." Section 401.21 does not say the "Government or Engineer" will conduct the testing.
 
 
 3
 We are not persuaded by North Santiam's argument that standard industry practice is for the purchaser to conduct acceptance testing and that the parties meant to import this practice into the contract. Evidence of custom and trade usage may not be used to contradict unambiguous contractual language. See George Hyman Constr. Co. v. United States, 564 F.2d 939, 945 (Ct.Cl.1977). Work Order B was drafted to resolve who was responsible for testing.
 
 
 4
 North Santiam's argument that AASHTO standard T-168 governed the contract and required the government to test fails for similar reasons. AASHTO T-168 is a general standard covering sampling of bituminous paving mixtures and again cannot supercede Work Order B.
 
 
 5
 The argument that an anonymous Forest Service employee authorized the deviations in specifications also fails because the United States is not bound if its agents act beyond the scope of their authority. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947); Strahle v. United States, 602 F.2d 344, 347 (Ct.Cl.1979). "[A] purported agreement with the United States is not binding unless the other party can show that the official with whom the agreement was made had authority to bind the Government." S.E.R., Jobs For Progress, Inc. v. United States, 759 F.2d 1, 4 (Fed.Cir.1985). North Santiam has made no showing that the anonymous Forest Service employee allegedly spoken to was acting within his authority.
 
 
 6
 The final argument is that Forest Service Standard Specification 106.05 requires duplicate samples to be taken before the price may be adjusted. But this specification applies to bituminous materials, not bituminous mixtures which are the subject of this dispute.
 
 
 7
 North Santiam cannot avoid contract price reduction because the tests were improperly done. The cases it relies on for the proposition that reduction is improper when testing is faulty do not apply because in each case testing was the government's responsibility either in whole or part.
 
 
 8
 The only question remaining, then, is about the Forest Service's method of adjusting the price. By clause 10(b) of the General Provisions, the Forest Service could have forced North Santiam to redo the road. Instead, it merely reduced the contract price to reflect the value received. It is true that there is no formula in the contract for price adjustment, but it was reasonable to use Table 401-2 of the Special Project Specification, which was commonly employed in these instances.